Commonwealth *vs.* Michael Hiskin.[1]

No. 06-P-397.

Plymouth. February 12, 2007. - April 9, 2007.

Present: Lenk, Grasso, & Grainger, JJ.

*Practice, Criminal,* Plea, Assistance of counsel. *Constitutional Law,* Plea, Assistance of counsel.

Discussion of the requirements that a guilty plea be intelligently and voluntarily made. [637-638]

A criminal defendant's plea of guilty of murder in the second degree and other crimes was intelligently made, where the prosecutor recited an account of the homicide and the defendant admitted to facts that constituted the unexplained elements of the crimes charged [638-640]; moreover, there was no objective indicia in the record or credible extrinsic proof that the defendant's sworn statements were the product of coercion, duress, or improper inducements [640-641]; further, that the judge did not specify a minimum and maximum sentence for the murder conviction was of no consequence [641-642], and the judge was not required to make specific findings as to the intelligence and voluntariness of the plea [642-643].

There was no merit to the criminal defendant's claim of ineffective assistance of counsel. [643]

INDICTMENTS found and returned in the Superior Court Department on June 24, 1991.

A motion to withdraw guilty pleas and for a new trial, filed on December 23, 2005, was heard by *Linda E. Giles,* J.

*David H. Mirsky* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. While on trial for murder in the first degree and other crimes, the defendant Michael Hiskin pleaded guilty to murder in the second degree and to the other crimes as charged. Twelve years later, he moved for a new trial and to withdraw

[1]Also known as Sam Jones.

his guilty pleas. He maintained that his pleas were not "knowing, intelligent, and voluntary" and that justice was not done because (1) he was coerced into pleading guilty by his defense counsel; (2) the plea colloquy was defective under the Sixth Amendment to the United States Constitution, art. 12 of the Massachusetts Declaration of Rights, and Mass.R.Crim.P. 12, 378 Mass. 866 (1979); and (3) his attorney rendered ineffective assistance of counsel in failing to conduct an adequate investigation. From the denial of that motion, the defendant appeals. We affirm.

Although the defendant's claim is not uncommon, its resolution highlights two principles, one often misstated, the other often overlooked. A guilty plea must be intelligent and voluntary, no less and no more. Moreover, a defendant's sworn statements during a guilty plea colloquy are statements of consequence and not mere conveniences later to be discarded. While not alone determinative of whether the defendant's guilty plea is intelligent and voluntary, the defendant's statements at colloquy have undeniable bearing and heft in considering a later claim to the contrary.

1. *Background.* The defendant's guilty pleas came during a joint trial with codefendants Leroy Ivey and Malcolm Robinson. Each was charged with murder in the first degree of Henry Bynum and the related shootings of Belinda Keith and Eugene Lapan.

Trial commenced on July 27, 1993. After jury empanelment, a view, and opening statements, the Commonwealth began its evidentiary presentation. Over two days, the jury heard from the Commonwealth's first three witnesses — Lapan; Brockton police Detective Kevin O'Connell; and Dr. William Zane, the medical examiner. During a recess, the defendant consulted with his attorney, Bruce Ferg, and then with his codefendants and their counsel. All agreed to accept plea bargains offered by the Commonwealth. In succession, Ivey, the defendant, and Robinson pleaded guilty to murder in the second degree and to the other indictments.[2] After colloquy, the judge accepted the guilty pleas and imposed the statutorily mandated sentence of

[2]The other indictments alleged armed assault with intent to murder (Keith and Lapan); assault and battery by means of a dangerous weapon (Keith and

life imprisonment for murder in the second degree and concurrent terms of years for the other offenses.

On December 22, 2005, the defendant filed a new trial motion, accompanied by his affidavit and that of his appellate counsel.[3] In his affidavit, the defendant asserted that he did not commit the crimes charged; he did not know the elements of the offenses, nor did his attorney explain them; his attorney "repeatedly insisted" that he plead guilty to murder in the second degree or the prosecutor's offer would be withdrawn; at a meeting with the codefendants and their counsel, his attorney stated that all had to plead guilty or all had to go to trial; he signed an "Acknowledgment of Attorney's Advice" at his attorney's insistence; in offering his change of plea it was his understanding that his attorney "had not conducted any witness interviews" in preparation for trial; he pleaded guilty because he believed that his attorney had not prepared adequately; and he only told the plea judge that his attorney had represented him fairly because his attorney "whispered in his ear" not to "mess it up" for his codefendants.

The plea judge having long since retired, another judge heard argument and denied the defendant's motion.

2. *The plea colloquy.* At the plea colloquy, the defendant, who was under oath, acknowledged that he was twenty-four years old with a tenth grade education. The judge set forth the indictments and dispositional recommendations and advised the defendant that he would not exceed these recommendations. The judge also explained the various constitutional rights the defendant was waiving by his plea (jury trial, confrontation, and the privilege against self-incrimination).

The prosecutor then detailed the factual basis for the charges. On the evening of May 9, 1991, the defendant, Ivey, Robinson,

---

Lapan); and unlawful possession of a firearm (two counts).

Although the defendant purports to challenge his plea to all the indictments, his brief focuses on the murder indictment and makes only passing reference to the others. Such a challenge does not rise to the level of adequate appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). A challenge to these indictments would fail as well.

[3]Appellate counsel's affidavit authenticated various documents filed with the motion, including docket entries, the indictments, correspondence, copies of the defendant's trial file, and other file notes of Attorney Ferg.

and a fourth individual brought two firearms to 57 Spring Street in Brockton, the home of Clara Lisenby. There, they discussed people they intended to assault that evening with the two firearms. The four then rode in a black Nissan Sentra automobile to 11 Park Street, Brockton, where they encountered Henry Bynum, Eugene Lapan, and Belinda Keith seated in a parking lot. After a brief verbal exchange, gunfire erupted from the Nissan. Lapan and Keith were wounded, and Bynum died from multiple gunshot wounds.

The defendant and the others returned to Spring Street and discussed the shooting. The next day, the police arrested the defendant and Robinson and, incident to their arrest, recovered a .380 caliber semiautomatic weapon. Ballistic testing of that weapon, shell casings recovered from the shooting, and the projectile recovered from Bynum's body established that the weapon seized from the defendant and Robinson was used in the shooting.

After the prosecutor's recitation, the colloquy continued as set forth in the margin.[4]

---

[4]THE COURT: "Mr. Hisken [*sic*], did you hear with [*sic*] the District Attorney just told me?"

THE DEFENDANT: "Yes."

THE COURT: "Did you participate in the events that he just talked to me about?"

THE DEFENDANT: "Yes."

THE COURT: "Do you understand by pleading guilty you admit every thing he told me is true?"

THE DEFENDANT: "Yes."

THE COURT: "Are there any facts you say are different?"

THE DEFENDANT: "No."

THE COURT: "You plead guilty willingly, freely and voluntarily?"

THE DEFENDANT: "Yes."

THE COURT: "Has anybody forced you to plead guilty?"

THE DEFENDANT: "No."

THE COURT: "Any threats been made to induce you to plead guilty?"

THE DEFENDANT: "No."

THE COURT: "Have you had enough time to fully discuss your case, your rights, your defenses and the consequences of a guilty plea with your lawyer?"

THE DEFENDANT: "Yes."

THE COURT: "Do you feel that he has fairly represented you?"

3. *Requirements of intelligence and voluntariness.* The governing principles are well established. "A postsentence motion to withdraw a plea is treated as a motion for a new trial." *Commonwealth* v. *Conaghan,* 433 Mass. 105, 106 (2000). Disposition of such a motion is within the judge's discretion, but "a rigorous standard must be applied and a judge may only allow such a motion 'if it appears that justice may not have been done.' " *Commonwealth* v. *Berrios,* 447 Mass. 701, 708 (2006), quoting from Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

In the context of a guilty plea, justice is not done when a defendant's plea of guilt is not intelligent and voluntary,[5] see *Boykin* v. *Alabama,* 395 U.S. 238, 242 (1969); *Commonwealth* v. *Correa,* 43 Mass. App. Ct. 714, 717 (1997); *Commonwealth*

---

THE DEFENDANT: "No."

THE COURT: "Do you understand what I have asked you?"

THE DEFENDANT: "You said, do I feel —— Oh yes."

THE COURT: "Do you feel that he has fairly represented you?"

THE DEFENDANT: "Yes."

THE COURT: "Do you feel that he has acted in your best interest?"

THE DEFENDANT: "Yes."

THE COURT: "Are you confused in any way by the questions that I have asked you?"

THE DEFENDANT: "No."

THE COURT: "As I understand it you're pleading guilty because you are guilty and for no other reason, is that correct?"

THE DEFENDANT: "Yes."

[5]There is no requirement that a guilty plea be "knowing" as well as "intelligent." Importation of the term "knowing" into the components of a guilty plea is a redundancy in terminology and unfortunate litany. See, e.g., *Commonwealth* v. *Andrews,* 49 Mass. App. Ct. 201, 203 (2000); *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. 572, 581 (2001); *Commonwealth* v. *Bowler,* 60 Mass. App. Ct. 209, 210 (2003). Use of the term "knowing" is but another way of describing the longstanding requirement that a guilty plea be made intelligently, i.e., with understanding of the nature of the charges, see *Commonwealth* v. *Fernandes,* 390 Mass. 714, 718-719 (1984), and the consequences of his plea, see *Commonwealth* v. *Morrow,* 363 Mass. 601, 605 (1973); *Commonwealth* v. *Correa,* 43 Mass. App. Ct. 714, 717 (1997).

Any confusion that has crept into the terminology is likely due to the requirement that a waiver of Miranda rights must be knowing, intelligent and voluntary to be valid. See, e.g., *Commonwealth* v. *Edwards,* 420 Mass. 666, 670 (1995); *Commonwealth* v. *Magee,* 423 Mass. 381, 386 (1996).

v. *Brannon B.*, 66 Mass. App. Ct. 97, 98 (2006), or is made without the advice of competent counsel. See *Brady* v. *United States*, 397 U.S. 742, 758 (1970); *Commonwealth* v. *Berrios*, 447 Mass. at 708. A defendant who has received a constitutionally inadequate plea colloquy is entitled to withdraw that plea. See *Commonwealth* v. *Colon*, 439 Mass. 519, 529 (2003).

A defendant's plea is intelligent when made with understanding of the nature of the charges (understanding of the law in relation to the facts) and the consequences of his plea (the legal consequences and constitutional rights he forgoes by pleading guilty rather than proceeding to trial); it is voluntary when free from coercion, duress, or improper inducements. See *Commonwealth* v. *Berrios*, *supra*; *Commonwealth* v. *Duest*, 30 Mass. App. Ct. 623, 631 (1991).

4. *Intelligence and voluntariness of the defendant's plea.* In challenging a guilty plea, a defendant may assert that the contemporaneous record of the plea proceeding itself demonstrates that the plea lacks the requisite intelligence and voluntariness; alternatively, he may offer extraneous evidence to supplement or contradict the record. See *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 492 (1985). Here, the defendant did not stand solely on the contemporaneous record but offered extraneous evidence (his affidavit and defense counsel's file notes) to contradict that record. The Commonwealth stood on the contemporaneous record of the plea. See *ibid.* In this posture, we assess the defendant's claims.

In a guilty plea colloquy a judge must conduct "a real probe of the defendant's mind" to determine that the plea is intelligent and "is not being extracted from the defendant under undue pressure." *Commonwealth* v. *Foster*, 368 Mass. 100, 107 (1975). *Commonwealth* v. *Fernandes*, 390 Mass. 714, 719 (1984). *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 718. A probe of the defendant's mind does not ask the impossible. A judge is not expected to read the defendant's mind or the multiplicity of unspoken thoughts and emotions that underlie the decision to plead guilty. To assess the intelligence and voluntariness of a defendant's plea, we necessarily rely on the defendant's sworn responses to the judge's informed questions made in the solemnity of a formal plea proceeding. The defendant's sworn

responses matter greatly.[6] "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Brady* v. *United States*, 397 U.S. at 748. While not solely determinative of the intelligence and voluntariness of a plea, the defendant's sworn statements at colloquy have undeniable bearing and heft in resolving a later claim to the contrary. See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 635-636 (2001) (defendant has burden to produce credible reason to reverse final decision that outweighs risk of prejudice to Commonwealth). The defendant's statements are no less important where his challenge to the intelligent nature of the plea, or its voluntariness, is grounded on extraneous evidence outside the contemporaneous record of the plea proceeding.[7]

a. *Intelligence of the plea.* For a plea to be intelligent, "[t]here must be an explanation by the judge or defense counsel of the elements of the crimes charged or an admission by the defendant to the facts constituting those crimes. This requirement can be satisfied in one of several ways: (1) by the judge explaining to the defendant the elements of the crime; (2) by counsel's representation that [he] has explained to the defendant the elements he admits by his plea; or, (3) by the defendant's stated admission to facts recited during the colloquy which constitute the unexplained elements." *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 717 (citation omitted).

Here, the contemporaneous record of the plea proceeding establishes the intelligence of the defendant's plea by virtue of his admission to facts that constituted the unexplained elements. The prosecutor's recitation of the account of the homicide and

---

[6]Of course, a defendant's legal competence has bearing on his sworn responses and his ability to plead guilty. See *Commonwealth* v. *Robbins*, 431 Mass. 442, 445 (2000) (test of competence to plead guilty similar to that for standing trial); *Commonwealth* v. *Conaghan*, 433 Mass. at 110 (question of competence to enter guilty plea).

[7]Indeed, when a challenge to the intelligence of a plea is grounded *solely* on the contemporaneous record of the plea proceeding, the defendant's sworn statements are the sole basis for concluding that he has admitted to facts constituting the unexplained elements of the crime. See *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343 (1978), cert. denied, 439 U.S. 1120 (1979); *Commonwealth* v. *Correa*, *supra* at 719.

the defendant's acknowledgment of his participation in response to the judge's questioning renders the plea intelligent. See *Commonwealth* v. *Colantoni*, 396 Mass. 672, 678-679 (1986); *Commonwealth* v. *Bowler*, 60 Mass. App. Ct. 209, 210-211 (2003). Nothing in the defendant's affidavit amounted to a credible reason for granting a new trial. Indeed, the newly minted protestation that he did not commit the crimes directly contradicts his sworn representation to the judge that he committed the acts recited by the prosecutor and that he was pleading guilty because he was guilty and for no other reason. See *Commonwealth* v. *Quinones*, 414 Mass. 423, 432 (1993) ("contemporaneous record" includes not only proceedings on acceptance of plea, but record of trial preceding plea). See also *Huot* v. *Commonwealth*, 363 Mass. 91, 101 (1973).

b. *Coercion.* The defendant's claim of coercion directly contradicts his professions under oath at the time of plea. There, the defendant acknowledged that he pleaded guilty "willingly, freely, and voluntarily"; nobody forced him or induced him to plead guilty by threats; he had sufficient time to discuss the case, his rights, his defenses, and the consequences of his plea with his lawyer; counsel had represented him fairly and in his best interest; and he was pleading guilty "because [he was] guilty and for no other reason." Such professions must mean something, and must have consequence, if guilty plea colloquies are to be more than stylized and empty formalities. The defendant's sworn statements must not be discarded on the later assertion that he had his fingers crossed. See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. at 635.

Absent objective indicia in the record or credible extrinsic proof that the defendant's sworn statements are the product of coercion, duress, or improper inducements (none of which was present here), the judge would have been warranted in denying the defendant's motion for this reason alone. The defendant's claim of coercion rests entirely on unsupported assertions in his affidavit that the judge was free to reject as self-serving and contradictive of previously sworn professions. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 663 (1998); *Commonwealth* v. *Grant*, 426 Mass. 667, 673 (1998). Conspicuously absent was an affidavit from the defendant's attorney, or from the

codefendants or their attorneys, corroborating the contention that the defendant's attorney insisted on an "all for one and one for all" strategy. See *Commonwealth* v. *Thurston*, 53 Mass. App. Ct. 548, 553-554 (2002).

Moreover, as noted by the judge, the defendant's trial file and his trial attorney's "meticulous file notes" directly contradicted the defendant's claim that his plea was coerced because his will was overborne. See *Huot* v. *Commonwealth*, 363 Mass. at 95-99; *Commonwealth* v. *Morrow*, 363 Mass. 601, 606-607 (1973); *Commonwealth* v. *Quinones*, 414 Mass. at 436. Defense counsel's notes chronicled his zealous efforts on behalf of the defendant and memorialized many occasions over many hours, both before and during trial, in which he and the defendant discussed all aspects of his case and a possible plea. The notes also indicated that it was *the defendant* who insisted on a "one for all" strategy. The "Acknowledgment of Attorney's Advice" signed by the defendant painstakingly outlined the benefit of pleading guilty to murder in the second degree (the possibility of parole and concurrent sentences) and the risks of continuing with trial for murder in the first degree. The considered advice of competent counsel does not constitute coercion. See *Huot* v. *Commonwealth*, 363 Mass. at 98-99; *Commonwealth* v. *Balliro*, 370 Mass. 585, 588-589 (1976).

Nothing in the plea colloquy or the extraneous materials submitted by the defendant detracts from the conclusion that the defendant's guilty plea was voluntary and the product of deliberate and rational decision making. See *Commonwealth* v. *Bolduc*, 375 Mass. 530, 536 (1978) (pressures not enough to render plea involuntary in constitutional sense); *Commonwealth* v. *Tirrell*, 382 Mass. 502, 510 (1981) (requiring peculiar susceptibility that creates such fear of penalty or hope of leniency as to preclude rational weighing of advantages); *Commonwealth* v. *Berrios*, 447 Mass. at 708-709 (possibility of receiving harsher sentence at trial and pressure from family, friends, codefendants, or counsel do not necessarily render plea invalid).

5. *Other alleged defects in the plea colloquy.* a. *Advice as to sentencing consequences.* Advice as to the statutorily prescribed sentence, or that to be imposed upon acceptance of the plea, is not among the "consequences of the plea" necessary for a plea

to be intelligent under the Federal or State constitutions. To the extent that advice about sentencing consequences may have been required, the requirement was one of rule. See Mass.R. Crim.P. 12(c)(3)(B), 378 Mass. 868 (1979).[8]

Here, the judge advised the defendant that he would not exceed the jointly recommended sentences without permitting the defendant to withdraw his plea. That the judge did not specify a minimum and maximum sentence for the murder conviction is of no consequence because the minimum and maximum sentences for murder are the same. Moreover, the benefit to the defendant of obtaining the possibility of parole by pleading guilty to murder in the second degree renders insignificant any deviation. "A slip in the protocol prescribed by rule 12 does not entitle a defendant to withdraw a guilty plea if it 'did not significantly affect the substance of the particular requirement.' " *Commonwealth* v. *Glines*, 40 Mass. App. Ct. 95, 99 (1996), quoting from *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 496. See *Commonwealth* v. *Clerico*, 35 Mass. App. Ct. 407, 413 (1993).

b. *Findings as to the intelligence and voluntariness of the plea.* Although not to be discouraged, neither the United States Constitution, the Massachusetts Declaration of Rights, nor the Rules of Criminal Procedure mandate that a judge make specific written or oral findings as to the intelligence and voluntariness of a plea. What is required is that the record support the intelligence and voluntariness of the plea. See Mass.R.Crim.P. 12(a)(2), 378 Mass. 866 (1979) (judge shall not accept plea without "determining" voluntariness and intelligence of plea). The rule also requires that "[a]t the conclusion of the hearing the judge shall state his acceptance or rejection of the plea." Mass.R.Crim.P. 12(c)(5)(B). Although the judge did not explicitly state that he accepted the defendant's plea, in the context of the proceeding, we infer such acceptance from the

---

[8]At the time of the defendant's plea, the rule required the judge to advise the defendant "where appropriate, of the maximum possible sentence . . . and of the mandatory minimum sentence, if any, on the charge." Mass.R. Crim.P. 12(c)(3)(B), 378 Mass. 866 (1979).

The rule has since been amended to require the judge to advise of many additional consequences.

contemporaneous imposition of the jointly recommended sentences.

6. *Ineffective assistance of counsel.* There is no merit to the assertion that the defendant pleaded guilty because his attorney had not adequately prepared his case for trial or investigated the impeachability of Clara Lisenby.[9]

Beyond the vagueness of the assertion and its questionable significance in view of other evidence, the defendant's contention of ineffectiveness contradicts his previous sworn statements during the plea colloquy.[10] The defendant fell far short of demonstrating that his attorney's performance failed either prong of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

> *Order denying motion to withdraw guilty pleas and for new trial affirmed.*

---

[9]Lisenby testified at a probable cause hearing prior to trial that she saw the defendant handle a black handgun and a silver handgun and heard him and his codefendants discussing individuals they intended to assault. The judge noted that a transcript of that testimony was available for impeachment purposes at trial.

[10]The defendant's current claim that he pleaded guilty because counsel was unprepared for trial contradicts his sworn statements to the plea judge that he was satisfied with defense counsel's representation and pleaded guilty "because [he was] guilty and for no other reason."