Commonwealth *vs.* Robert E. Williams.

No. 07-P-122.

Norfolk. December 18, 2007. - March 6, 2008.

Present: Duffly, Graham, & Katzmann, JJ.

*Practice, Criminal,* Plea.

The Superior Court judge who accepted the criminal defendant's guilty pleas, after a jury had been empanelled and just before trial was to begin, did not abuse his discretion in denying the defendant's motion to withdraw his pleas based on a claim that they were not voluntary, where the contemporaneous record of the plea colloquy revealed that the judge had not engaged in a rote litany of questioning when accepting the pleas, but had listened attentively to the defendant's answers and had responded to the concerns flowing from the answers, employing two sidebar conferences and allowing an off-the-record discussion between the defendant and his counsel in order to obtain necessary clarification where the initial response to a question had created a concern that the plea was not voluntary or intelligent; and where it was within the judge's province to conclude, based on his experience with the defendant and his review of the affidavit accompanying the defendant's motion to withdraw his pleas, that the defendant's claim of coercion at the time of his plea was unsupported, self-serving, and not credible. [353-362]

Indictments found and returned in the Superior Court Department on November 17, 1999.

A motion to withdraw a guilty plea, filed on May 14, 2004, was heard by *Thomas E. Connolly*, J.

*David J. Barend* for the defendant.

*Tracey A. Cusick*, Assistant District Attorney, for the Commonwealth.

Katzmann, J. After a jury was empanelled and just before trial was to begin, the defendant pleaded guilty to armed robbery, in violation of G. L. c. 265, § 17, and assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(*b*). The issue presented on appeal is whether the Superior

Court judge who accepted the defendant's guilty pleas abused his discretion in denying the defendant's motion to withdraw those pleas based on a claim that they were not voluntary. We affirm.

*Background.* On November 17, 1999, the defendant was indicted on eleven charges arising from four separate incidents. At issue here are two charges alleging that on July 26, 1999, in Brookline, the defendant committed armed robbery, and assault and battery by means of a dangerous weapon, upon a female victim.

Between November 15, 2000, and April 12, 2001, the defendant or his counsel participated in a series of lobby conferences with the Commonwealth and several different Superior Court judges to discuss the possibility of the defendant's pleading guilty to the two charges. On at least one of these occasions, a Superior Court judge indicated that he would be inclined to impose a sentence of ten years to ten years and a day if the defendant pleaded guilty to the two charges. No agreement was reached, and after the Commonwealth's motion for joinder of all cases was denied, the two charges were scheduled for trial.

On June 18, 2001, the matter was called for trial before a new Superior Court judge. At that time, the judge allowed the Commonwealth's motions in limine to introduce evidence of the defendant's statement to the police after his arrest, to introduce the victim's medical records, and to introduce evidence of several of the defendant's prior criminal convictions. The judge also denied the defendant's pro se motions, filed that day (and argued by his counsel at the judge's direction), to (a) continue the matter until a transcript of a motion to suppress hearing from a different proceeding could be obtained (in order to challenge voluntariness)[1]; and (b) dismiss the charges pursuant to Mass.R.Crim.P. 36, as amended, 422 Mass. 1503 (1996). The judge then empanelled the jury.

On the next morning, June 19, 2001, as the jury were poised to enter the courtroom, and opening statements were set to begin, in a sidebar conference, the defendant, through counsel,

---

[1]The Commonwealth represented that the transcript involved statements that the defendant made to a Brookline detective regarding an unrelated incident in a different county.

expressed to the judge his desire to explore the possibility of pleading guilty to the two indictments. In an ensuing discussion concerning potential sentences, the Commonwealth stated that, on a plea of guilty to just the two indictments set for trial that day, it would recommend a sentence of twelve to fifteen years from and after a sentence the defendant was then serving in Plymouth County; or, if the defendant pleaded guilty to all outstanding indictments, a slightly longer sentence to run concurrently with the twelve to fifteen year sentence, from and after the Plymouth County sentence. Defense counsel indicated that this was an increase in comparison to a potential sentence the defendant had previously passed over. The judge suggested that defense counsel discuss the sentencing possibilities with the defendant.

After a break of an unspecified duration, the parties returned to sidebar, where defense counsel conveyed the defendant's willingness to plead guilty to the two indictments, and that the defendant was not yet prepared to plead to the other outstanding indictments. A plea colloquy on the two indictments followed.

The judge opened the colloquy by calling the defendant to the stand and explaining to the defendant that before the judge could accept the plea, the defendant needed to answer certain questions to enable the judge to ascertain whether the plea was voluntary and intelligent and whether the defendant understood the consequences of the plea. The judge instructed the defendant that if he did not understand any of the questions, he should ask for clarification or to speak with his attorney. The defendant acknowledged his understanding of these instructions.

The plea colloquy then proceeded without event, until the judge queried the defendant regarding his understanding of his right to receive a fair trial. It is that juncture which serves as the focus of the instant appeal, and to which we shall return later. For now, we note that when first queried, the defendant indicated that he felt that he could not receive a fair trial. After inquiring as to the basis for the defendant's response, the judge initially refused to accept the defendant's plea and expressed his intention to bring in the jury and to start the trial. Suffice it to say that ultimately the colloquy resumed, and the defendant changed his answer.

As the colloquy proceeded, the judge then asked the Com-

monwealth to provide a recitation of the facts as they would be presented at trial. That recitation demonstrated that there was a strong factual basis to support the defendant's convictions for the commission of the charged crimes.[2]

Towards the end of the colloquy, by way of review, the judge asked the defendant whether he was confused by any of the questions. The defendant replied, "No." He further acknowledged that he was pleading guilty "voluntarily, knowingly, and intelligently" and that he was pleading guilty "[b]ecause I'm guilty and I choose to do so." The defendant and defense counsel then acknowledged that the defendant had reviewed, signed, and understood the written waiver of his rights.

The judge then concluded:

> "I accept the change of plea. I find there is a factual basis for the guilty plea; that the defendant is not presently under the influence of drugs or alcohol, and is not presently suffering from any mental illness or condition that affects in any way this plea.
>
> "I further find the defendant understands the rights that he is waiving and that he is knowingly, willingly, voluntarily and intelligently waiving those rights.
>
> "I also find the defendant understand[s] the charges to which he's pleading guilty and the consequences of pleading guilty and that the plea was offered knowingly, willingly, voluntarily, and intelligently."

---

[2] In the recitation of the facts, the Commonwealth stated that the evidence would show that a woman was robbed in Brookline on the evening of July 26, 1999; that the victim would testify that she struggled with the assailant (whom she had described to the police); and that "[w]hen the assailant realized that he was not getting the better of [the victim], he threatened her by stat[ing], "Don't make me do something." According to the victim, the assailant took out a "hunting-type knife," with a blade approximately eight inches long, and cut her forefinger and her thumb, nearly severing her thumb. The assailant then took the victim's bag and fled to a dark hatchback vehicle. Furthermore, even putting aside the defendant's partial confession to the police and his admission to the robbery, there was other substantial evidence linking the defendant to the charged crimes. This included the victim's Walkman radio, which was found in the defendant's bag when he was arrested. Moreover, the evidence included knives retrieved from the defendant's car pursuant to an inventory search and a search warrant, among them a hunting-type knife with a blade approximately eight inches long.

The plea colloquy was thereby concluded.[3]

On May 14, 2004, the defendant, now represented by new counsel, filed a motion to withdraw his guilty plea pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), asserting that the plea was not intelligently or voluntarily made and that certain of the judge's statements had a coercive effect on the defendant's decision to plead guilty.[4] In an affidavit accompanying the rule 30(b) motion, the defendant averred that he had previously filed a motion to dismiss his trial counsel and that certain of counsel's efforts were essentially ineffective.[5] The defendant further averred that when he pleaded guilty, he "did not believe that [he] could receive a fair trial." The motion was not accompanied by an affidavit from plea counsel.

After a February 6, 2006, hearing, the judge, who was also the plea judge, denied the motion. In a subsequent memorandum of decision and order, dated March 13, 2006, the judge explained that he had denied the defendant's pro se motion for a continuance as frivolous because it was "an attempt to delay the trial and have it assigned to a different judge"; he also characterized the transcript of the suppression hearing requested by the defendant as pertaining to an unrelated matter. The judge further explained that when the defendant initially expressed concerns about receiving a fair trial, the judge indicated that he would

---

[3]The judge sentenced the defendant to not less than twelve years and not more than fifteen years in State prison on the armed robbery charge, to be served from and after a sentence of from five years to five years and a day that the defendant was then serving in Plymouth County, along with a concurrent sentence of not less than nine years nor more than ten years on the assault and battery by means of a dangerous weapon charge.

[4]On July 20, 2001, the defendant filed a motion to revise and revoke the sentences. Neither the motion nor the accompanying affidavit are included in the present record. There is no indication in the docket that this motion was ever acted on.

[5]The list of purported failures encompassed in the defendant's affidavit included counsel's refusal to renew the defendant's motion to dismiss him as counsel, his failure to file a motion for a speedy trial, and his failure to obtain transcripts which, in the defendant's view, were necessary for impeachment at the June 18, 2001, trial. See note 1, *supra.* As noted above, the latter two complaints had been raised in the defendant's pro se motions on the first day of trial. Prior to the trial date, in the course of a hearing before a different judge, the defendant had expressed reservations about the quality of defense counsel's representation, asserting, inter alia, that counsel had failed to forward transcripts to the defendant.

not accept the plea, but that after subsequently observing the defendant speak with counsel, he permitted the plea colloquy to continue. The judge then noted that he accepted the plea because the defendant, after indicating that he wished to proceed again, answered all the questions voluntarily and intelligently; the evidence of guilt was overwhelming; and the defendant's extensive experience in the criminal justice system belied any concern of coercion. Lastly, the judge noted that the rule 30(b) motion was filed almost three years after the guilty plea,[6] and that no affidavit from counsel had been filed with the motion.

*Discussion.* The thrust of the defendant's appeal is that the judge did not conduct a "real probe" of the defendant's mind during the plea colloquy on the issue of his right to a fair trial, and thus the record did not establish that he was entering his plea voluntarily. Hence, he claims that the judge abused his discretion in denying the defendant's motion for a new trial and in refusing to allow him to withdraw his guilty plea.

"A postsentence motion to withdraw a plea is treated as a motion for a new trial." *Commonwealth* v. *Hiskin*, 68 Mass. App. Ct. 633, 637 (2007) (*Hiskin*), quoting from *Commonwealth* v. *Conaghan*, 433 Mass. 105, 106 (2000). "Although the disposition of such a motion is within the discretion of the judge, a rigorous standard must be applied and a judge may only allow such a motion 'if it appears that justice may not have been done.' " *Commonwealth* v. *Berrios*, 447 Mass. 701, 708 (2006), cert. denied, 127 S. Ct. 2103 (2007), quoting from Mass.R.Crim.P. 30(b).

In reviewing the disposition of a motion for a new trial, we must "determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Milley*, 67 Mass. App. Ct. 685, 687 (2006), quoting from *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). The denial of such a motion "will not be reversed unless it is manifestly unjust." *Commonwealth* v. *Acevedo*, 446 Mass. 435, 441 (2006), quoting from *Commonwealth* v. *Tennison*, 440 Mass. 553, 566 (2003). "We grant substantial deference to a decision denying a rule

---

[6]It is, however, of note that the defendant did not receive the transcript of the June 19, 2001, plea colloquy until July 2, 2003, more than two years after pleading guilty.

30 (b) motion . . . when the judge passing on the motion is the same judge who heard the plea." *Commonwealth* v. *Grant*, 426 Mass. 667, 672 (1998). In the case at bar, as the motion judge was also the plea judge, we accord substantial deference to his decision to deny the motion.

"In the context of a guilty plea, justice is not done when a defendant's plea of guilty is not intelligent and voluntary, . . . is made without the advice of competent counsel," or is a result of a constitutionally inadequate plea colloquy. *Hiskin, supra* at 637-638. "A defendant's plea is intelligent when made with understanding of the nature of the charges (understanding of the law in relation to the facts) and the consequences of his plea (the legal consequences and constitutional rights he forgoes by pleading guilty rather than proceeding to trial); it is voluntary when free from coercion, duress, or improper inducements." *Id.* at 638.

In administering a plea colloquy, a judge must undertake "a real probe of the defendant's mind" to ascertain whether the plea is both intelligent and voluntary, that is to say, it "is not being extracted from the defendant under undue pressure." *Ibid.*, quoting from *Commonwealth* v. *Foster*, 368 Mass. 100, 107 (1975). Accord *Commonwealth* v. *Fernandes*, 390 Mass. 714, 719 (1984); *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 718 (1997). The inquiry of the defendant "is not to become a 'litany' but is to attempt a live evaluation of whether the plea has been sufficiently meditated by the defendant with guidance of counsel, and whether it is not being extracted from the defendant under undue pressure." *Commonwealth* v. *Foster, supra* at 107. "A probe of the defendant's mind does not ask the impossible." *Hiskin, supra* at 638. In conducting this inquiry, the judge may rely heavily on the defendant's sworn responses; "[a] judge is not expected to read the defendant's mind or the multiplicity of unspoken thoughts and emotions that underlie the decision to plead guilty." *Ibid.* The judge may appropriately recognize that psychological stress or emotional pressure is inherent in the decision to enter a guilty plea, and that this stress does not necessarily render the plea involuntary. *Commonwealth* v. *Berrios*, 447 Mass. at 708. See Smith, Criminal Practice and Procedure § 23.52 (3d ed. 2007). In assessing

whether the contemporaneous record supports a determination that the plea was entered voluntarily, without undue coercion, it is appropriate to consider the full record and the context provided by such examination. See *Commonwealth* v. *Balliro*, 370 Mass. 585, 586 (1976) (determination of coercion "requires an analysis of the circumstances surrounding the defendant's pleas"). Cf. *Commonwealth* v. *Miller*, 68 Mass. App. Ct. 835, 842 (2007), quoting from *Commonwealth* v. *Raymond*, 424 Mass. 382, 395 (1997) ("the voluntariness of a confessional statement or admission is measured by 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act' ").

The plea proceeding is not some frivolous exercise, where words have no meaning and answers are of no consequence. Nor is it a game where a defendant enters a plea "to test the weight of potential punishment," *Commonwealth* v. *Lopez*, 426 Mass. 657, 662 (1998), quoting from *Commonwealth* v. *De-Marco*, 387 Mass. 481, 485 (1982), as a prelude to a postconviction challenge. Rather, the plea proceeding is a formal and solemn occasion very much grounded in the affirmations under oath by the defendant:

> "While not solely determinative of the intelligence and voluntariness of a plea, the defendant's sworn statements at colloquy have undeniable bearing and heft in resolving a later claim to the contrary. See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 633-636 (2001) (defendant has burden to produce credible reason to reverse final decision that outweighs risk of prejudice to Commonwealth). . . . Such professions must mean something, and must have consequence, if guilty plea colloquies are to be more than stylized and empty formalities. The defendant's sworn statements must not be discarded on the later assertion that he had his fingers crossed. See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. at 635."

*Hiskin, supra* at 639-640.

Returning to the present case, the record shows that the judge was not engaged in a rote litany of questioning, but listened

attentively to the defendant's answers and responded to the con-
cerns flowing from the answers. He did not rush the proceeding.
At two separate instances during the colloquy the judge expressed
concern that the defendant's plea might not be voluntary or
intelligent. First, after learning that the defendant did not believe
he could get a fair trial, the judge initially declared an intention
to refuse the plea. Second, after learning that the defendant did
not remember, and therefore, was not prepared to acknowledge
certain facts relating to the charges,[7] the judge, in a sidebar
conference called to address the defendant's answer, asked,
"Counsel, what do you want me to do?"

Because it reflects the noncoercive tenor of the proceedings,
we first take note of the latter of the two occurrences, where the
defendant professed an inability to recall certain facts of his
criminal conduct.[8] In that instance, immediately after the de-
fendant's initial response that he did not remember certain facts,
the judge engaged in further inquiry to probe the defendant's
memory. When the judge ascertained that the defendant was
under the influence of drugs at the time of the incident, the
judge immediately requested a sidebar conference. At the side-
bar conference, the judge learned from defense counsel that
the defendant was prepared to acknowledge the substance of the
facts, but legitimately could not remember certain minor details;
the judge thus permitted defense counsel an opportunity to
speak with the defendant to clarify the defendant's response.
After counsel and the defendant had an "off the record discus-
sion," so noted in the transcript, the judge again inquired of

---

[7] The defendant makes no argument on appeal that he failed to understand
the nature of the charges against him.

[8] After the Commonwealth's recitation of the facts, the judge asked the
defendant whether it accurately described his conduct. The following discus-
sion resulted:

THE DEFENDANT: "Truthfully, your Honor, I don't remember too much from
back then. But I would have to agree, at this time, that that's what happened. I
was just deeply under the influence of cocaine and heroin at the time. I don't
recall everything that happened in that era."

THE COURT: "So what you're telling me is that you don't remember what
happened?"

THE DEFENDANT: "Yeah, I don't remember what happened that night. I wasn't
in my right state of mind. I was drugged out."

defense counsel, at a second sidebar conference, whether the defendant intended to clarify his response. After ascertaining from counsel that the defendant did intend to clarify his response, the judge resumed the colloquy. He again asked the question, to which he received an acknowledgment of the facts as presented by the Commonwealth.

Thus, where the initial response to the question concerning the factual basis for the charges created a concern for the judge that the plea was not voluntary or intelligent, the judge employed two sidebar conferences and allowed an off-the-record discussion, noted in the transcript, between the defendant and defense counsel to obtain the necessary clarification. By using these procedural means to minimize his legitimate concerns, the judge permitted the necessary clarifications to be recorded by the court reporter, thereby dispelling any ambiguities on this point in the record.[9]

The earlier discussion in the colloquy concerning the right to a fair trial is the focus of the defendant's appeal.[10] In that instance, when the defendant appeared to indicate that he did not believe he could receive a fair trial and that his attorney was

---

[9]In a similar respect, when during the colloquy the judge misstated the terms of the sentences he would impose, he permitted a sidebar conference with counsel for clarification and, following the sidebar, stated to the defendant, on the record, that he had made an error in reciting the terms of the sentences. The judge then restated the correct terms and asked the defendant several times if he understood. The defendant's affirmative responses served to dispel concerns on this point.

[10]The judge inquired whether the defendant understood that by pleading guilty, he recognized he was giving up certain rights. The defendant responded affirmatively. When the judge asked a specific question about those rights, the following discussion ensued:

THE COURT: "I want to go over these rights with you now, sir. Do you understand you have the right to a fair and impartial trial with or without a jury to determine your guilt or your innocence, sir?"

THE DEFENDANT: "Circumstances I can't agree with that, though."

THE COURT: "Do you understand you have a right to a fair and impartial trial with or without a jury to determine your guilt or innocence?"

THE DEFENDANT: "I don't feel as though I was getting a fair trial, your Honor."

THE COURT: "Sir, we haven't even started the trial."

THE DEFENDANT: "I — my attorney is ill-prepared to present anything for me, your Honor."

unprepared, the judge asked the defendant a series of questions

THE COURT: "What's that?"

THE DEFENDANT: "He's ill-prepared, in my eyes, to proceed with a trial."

THE COURT: "Please, tell me what you're — you tell me in what he is unprepared in?"

THE DEFENDANT: "One, you already denied me the right —"

THE COURT: "What is he unprepared in, sir? That's the question. You tell me right now."

THE DEFENDANT: "He hasn't prepared a defense."

THE COURT: "What specifically?"

THE DEFENDANT: "He hasn't prepared a defense, as in he hasn't obtained documents that I had requested him to gather months ago, a year ago. He hasn't strategized anything with myself."

THE COURT: "Yeah."

THE DEFENDANT: "All right. The Court has also denied me the right to seek these transcripts of documents that I need."

THE COURT: "Okay."

THE DEFENDANT: "And I feel it's not any possible way for me to get a fair trial."

THE COURT: "Thank you very much."

After this exchange, the judge asked defense counsel whether he "wish[ed] to be heard on any of that issue." Defense counsel responded, "No." The judge then stated: "Thank you very much. What we're going to do, is I'm going to refuse the plea and we'll bring our jury in and we'll start the case."

Defense counsel then asked, "Can I have a minute to talk to him, your Honor?" The judge replied, "You may." The next notation on the record was as follows:

COUNSEL: "Your Honor, I would ask if your Honor could inquire. I think — this has been very difficult, I pointed out at side bar and I — I think he's prepared to change his plea."

THE COURT: "Sir, my question is, do you understand you have a right to a fair and impartial trial with or without a jury to determine your guilt or your innocence, sir?"

THE DEFENDANT: "Yes."

The judge then proceeded with questions concerning jury composition; the defendant's right to participate in jury selection; the function of a jury as fact finder; the requirement that the jury reach unanimous agreement; the option of proceeding before a judge instead of a jury; the presumption of innocence; and the rights, at trial, to confront and cross-examine adverse witnesses, to present a defense, and to remain silent or testify on his own behalf. The defendant responded "Yes" to each of these questions. The judge then asked (twice) whether the defendant understood all these rights. The defendant responded affirmatively in both instances. The defendant provided a further response of "Yes" to a question concerning whether he understood he was giving up these rights by pleading guilty.

for clarification of his response. The defendant's responses to these questions reinforced the judge's concerns, leading him to state on the record his intention to refuse the plea: "What we're going to do, is I'm going to refuse the plea and we'll bring our jury in and we'll start the case."

Following this declaration, the judge permitted defense counsel an opportunity to speak with the defendant. Although the hearing transcript does not specifically indicate that counsel spoke with the defendant or that there was a recess to provide this opportunity, it is a reasonable inference from the sequence of the questions and answers before and after the resumption of the plea colloquy that there was such a consultation.[11] Moreover, after defense counsel represented that the defendant wished to proceed, the judge asked the same question regarding the right to a fair and impartial trial, to which the defendant replied affirmatively. The judge did not probe the defendant's response. However, from this response, as well as the representations of counsel, the judge could have reasonably inferred that the defendant wished for the judge to disregard the defendant's earlier responses.

In further support of this inference, later in the proceedings, the defendant indicated that he had had enough time to fully discuss his case, his rights, and possible defenses and consequences of his guilty plea with his attorney; that his attorney had discussed and explained all the options available to him; that he believed that he had been fairly represented by his attorney; that his attorney had acted in his best interest; that he was pleading guilty because he was guilty and chose to so plead; that he knew of no reason why the judge should not accept his guilty plea; that no person had forced him to plead guilty; and that no threats or promises had been made to induce

[11]The judge, in his memorandum of decision and order on the motion to withdraw the guilty plea, recalled that the defendant and counsel spoke "privately" "within the vision of the Court." See *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981) (motion judge may rely on his knowledge of trial events when ruling on motion for new trial). See also *Commonwealth* v. *Quinones*, 414 Mass. 423, 432 (1993) ("contemporaneous record properly may be reconstructed by the trial judge's recitation in a memorandum of decision of what he remembers of the plea colloquy"); *Commonwealth* v. *Rzepphiewski*, 431 Mass. 48, 54 (2000); *Commonwealth* v. *Duest*, 26 Mass. App. Ct. 137, 144-147 (1988), *S.C.*, 30 Mass. App. Ct. 623 (1991).

him to plead guilty. Contrast *Commonwealth* v. *Fernandes*, 390 Mass. at 717-719.

On the basis of the contemporaneous record alone, the judge could properly deny the defendant's motion for a new trial. See *Hiskin, supra* at 640. See also *Commonwealth* v. *Ortiz*, 67 Mass. App. Ct. 349, 354 (2006) (motion for new trial is addressed to discretion of trial judge). In his affidavit in support of his motion to withdraw his guilty plea, the defendant reasserted that when he pleaded guilty he did not believe that he could receive a fair trial, and that "I stated during the colloquy that I could receive a fair trial solely to avoid the judge's threat of forcing me to proceed with what I truly believed would be an unfair trial." The judge noted the defendant's extensive experience in the criminal justice system and the judge's belief that the defendant, as part of a pattern of "manipulative" actions, was merely attempting to continue the trial to obtain a different judge.[12] The judge also noted the overwhelming and undisputed nature of the evidence of guilt presented against the defendant. Based on his experience with the defendant and his review of the defendant's affidavit, it was within the judge's province to conclude that the defendant's claim of coercion was unsupported, self-serving, and not credible. See *Commonwealth* v. *Lopez*, 426 Mass. at 663, quoting from *Commonwealth* v. *Stewart*, 383 Mass. 253, 260 (1981) ("[i]t is . . . an axiom of rule 30 [b] practice . . . that the judge may decide a rule 30 [b] motion based solely on affidavits; may discredit untrustworthy affidavits; and need only proceed to evidentiary hearing 'where a substantial issue is raised [by the motion or affidavits] and is supported by a substantial evidentiary showing' "). "Nothing in the plea colloquy or [the defendant's affidavit] . . . detracts from the conclusion that the defendant's guilty plea was

---

[12]Although the judge noted that it took the defendant "two years and eleven months" to file the motion to withdraw the guilty plea (thereby implying that the defendant was only pursuing withdrawal due to the dissatisfaction with his present confinement), the defendant did not receive the transcript of the proceedings until some two years after he requested them. See note 6, *supra*. In addition, he filed, through counsel, a motion to revise and revoke the sentences within one month of the guilty plea. The contents and substance of the revise and revoke motion are not included in the record before us.

voluntary and the product of deliberate and rational decision making."[13,14] *Hiskin, supra* at 641. There was no abuse of discretion.

Finally, while the contemporaneous record here reflects that the judge was solicitous of the defendant's rights, and sought to ensure that his guilty plea met constitutional standards, it also is true, with the benefit of hindsight, that there was arguably an issue which could have been resolved immediately and directly during the plea colloquy. To be sure, there is no talismanic formulation for determining what constitutes "a real probe of the defendant's mind." *Commonwealth* v. *Foster,* 368 Mass. at 107. Nor do we suggest that a plea judge bears the impossible burden of all-knowing seer.[15] Each case must be assessed in its particular context. Although the judge had no obligation to state on the record his basis for permitting the resumption of the plea colloquy or his basis for proceeding without further probing the defendant's change of heart, see *Hiskin, supra* at 642, here the judge, by questioning, might have elicited explicitly and immediately from the defendant that he had conferred with his counsel, and that without coercion he was asking the judge to disregard his earlier negative answer concerning his ability to get a fair trial. Such a sequence advances the approved goals of

[13]The defendant also claims that the guilty plea was coerced because the judge, who had empanelled the jury, presented him with a Hobson's choice — either plead guilty or proceed to a trial which he believed would be unfair. This claim is unpersuasive. As has been noted, the judge questioned the defendant regarding his ability to receive a fair trial, and his satisfaction with counsel. Under oath, upon resumption of the questioning after the colloquy had been interrupted, the defendant answered affirmatively. Such responses under oath are to be taken seriously. See *Hiskin, supra* at 640.

[14]The defendant's claim in his affidavit that trial counsel was ineffective in his preparation is "conspicuously marred" by his failure to file an affidavit from his attorney, or to even indicate that he sought to obtain an affidavit from counsel. *Commonwealth* v. *Thurston,* 53 Mass. App. Ct. 548, 553-554 (2002). Compare *Commonwealth* v. *Pingaro,* 44 Mass. App. Ct. 41, 52 n.16 (1997). Moreover, the defendant has "failed to satisfy his burden of demonstrating that the absence of [counsel's] alleged deficiencies . . . would have accomplished something material for the defense." *Commonwealth* v. *Berrios,* 447 Mass. at 711-712, citing *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).

[15]In this regard, counsel should also be alert to any ambiguities created by the defendant's responses in a plea colloquy, and should seek to have them resolved during the change of plea proceeding.

encouraging reliance on the contemporaneous record and discouraging postconviction proceedings, *Commonwealth* v. *Foster*, *supra* at 107, and supports the "presumption of regularity and the important policy of finality" accorded a guilty plea. *Commonwealth* v. *Lopez*, 426 Mass. at 662.

> *Order denying motion to withdraw guilty plea and for new trial affirmed.*