COMMONWEALTH vs. WARREN STANTON.

Worcester. September 9, 1974. — October 18, 1974.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Plea. *Constitutional Law,* Waiver of constitutional rights, Due process of law.

A prosecutor's failure to disclose to the court the existence of a plea bargain with a criminal defendant did not preclude the court from finding that the defendant knowingly and voluntarily made a plea of guilty. [617-621]

A criminal defendant knowingly and voluntarily entered a guilty plea, even though he believed his counsel's erroneous prediction that he would be confined only one year in a forestry camp and even though he had not been informed of his parole eligibility. [621-622]

INDICTMENT found and returned in the Superior Court on September 24, 1971.

A motion to revoke sentence and vacate pleas of guilty, or to revise sentence, was heard by *Beaudreau, J.*

*Kirk Y. Griffin (Jeanne Baker* with him) for the defendant.

*Thomas X. Cotter,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant was brought to trial in the Superior Court on two indictments, one charging him with the crime of rape and the other with assault and battery. At the conclusion of the first day of the trial, at which both the victim and the examining physician testified, the defendant's counsel consulted with the assistant district attorney to determine what recommendation he would make to the court as to sentence should the defendant change his pleas to guilty. The assistant district attorney informed the defendant's counsel that he would

state to the court that in his judgment an appropriate sentence would be from three to five years. The defendant, who was free on bail, went home and discussed with his wife the possibility of changing his pleas. He returned to court the following morning, accompanied by his wife. Prior to the resumption of the trial the judge was informed that the defendant desired to change his pleas. Thereupon, pleas of guilty were offered, immediately following which the judge pursued an extensive examination of the defendant to ascertain his comprehension of his constitutional rights and of the consequences of pleading guilty to the charges which confronted him.[1]

---

[1] The parts of the judge's examination material to the issue to be decided in this case follow:

THE JUDGE: "You understand by pleading guilty you leave this Court to impose a sentence according to the law and the maximum sentence in this case is life imprisonment, do you understand that?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "Have any promises been made to you to plead guilty; anybody promise you anything?"

THE DEFENDANT: "No."

THE JUDGE: "You understand that if the District Attorney has made a recommendation for sentence that I don't have to follow that: you understand that, don't you?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "So, there were no promises that were made to you to induce you to plead guilty, is that right?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "No one has forced you to plead guilty?"

THE DEFENDANT: "No, sir."

THE JUDGE: "Have any threats been made to you which induced you to plead guilty?"

THE DEFENDANT: "No."

THE JUDGE: "Have you discussed the matter fully with your attorney, Mr. Reardon?"

THE DEFENDANT: "I haven't had too much time to discuss anything with him."

The assistant district attorney made the recommendation previously indicated.   The judge imposed a sentence of

---

THE JUDGE:   "Do you want more time to discuss this matter about pleading guilty before you continue here on the stand?"

THE DEFENDANT:   "We have started to — we had talked about it a little bit."

THE JUDGE:   "Well, do you want to retract your plea of guilty?"

THE DEFENDANT:   "I really don't know right now."

THE JUDGE:   "Do you want more time to talk to your attorney?"

THE DEFENDANT:   "If I could have, please."

THE JUDGE:   "Go ahead."

(The defendant conferred with his attorney)

THE JUDGE:   "Now, have you discussed this matter fully with your attorney, Mr. Reardon?"

THE DEFENDANT:   "Yes, sir."

THE JUDGE:   "Were you confused in any way by the questions I have asked you?"

THE DEFENDANT:   "No, sir."

THE JUDGE:   "You understand again that the charge here is rape, that means that you forcefully penetrated this woman on July 1, 1971, do you understand that?"

THE DEFENDANT:   "Yes, sir."

THE JUDGE:   "It was against her will and against her consent, do you understand that kind of language?"

THE DEFENDANT:   "Yes, sir."

THE JUDGE:   "You also punched her during the course of this event, do you understand that?"

THE DEFENDANT:   "Yes, sir."

THE JUDGE:   "You admit to those things?"

THE DEFENDANT:   "Yes, sir."

THE JUDGE:   "Is there anything now in these questions that I asked you just a few minutes ago, within five minutes ago, that you are confused about in any way; or do you want me to repeat them?"

THE DEFENDANT:   "No."

*          *          *

from nine to twelve years on the indictment charging rape. The second indictment was placed on file.

Almost two months later the defendant, through his present counsel, filed a motion to revoke sentence and to vacate the guilty pleas or, in the alternative, to revise the sentence (G. L. c. 278, § 29C). An evidentiary hearing, subject to the provisions of G. L. c. 278, §§ 33A-33G, was held on that motion, following which the judge found, among other things, that the pleas were knowingly and voluntarily made. The motion was denied, and the defendant's exception was duly filed.

The defendant bases his assignments of error on an alleged denial of due process under the Fourteenth Amendment to the Constitution of the United States, asserting that his pleas were not knowingly or voluntarily made in that: (1) the trial judge failed immediately prior to the imposition of sentence to provide the defendant an opportunity to withdraw his previously offered pleas when it became apparent to the court, in its sentencing discretion, that it could not adopt the prosecutor's recommendation and felt compelled to impose a more severe sentence than that recommended by him; (2) the defendant was not informed of all the consequences of his pleas, particularly regarding parole eligibility; and (3) justice was not done for the reason that the pleas were induced by the defendant's belief, falsely represented to him by his counsel, that he would spend no more than one year in jail and that such period of confinement would be spent at a forestry camp.

We hold that the defendant's pleas were both knowingly and voluntarily made and that the defendant's assignments of error are without merit.

THE JUDGE: "There is nothing else you want to ask me or any reservations in your mind at all, are there now?"

THE DEFENDANT: "No, sir."

THE JUDGE: "There is nothing you want to ask me?"

THE DEFENDANT: "No, sir."

The defendant's first assignment of error rests on the assumption that the defendant was induced to plead guilty in reliance on the prosecutor's offer to recommend a short sentence. The defendant argues that his guilty pleas were rendered involuntary by the trial court's failure to inquire fully into the existence and content of any "plea bargain" which might have induced the pleas of guilty and by the court's failure to offer the defendant an opportunity to withdraw the allegedly bargain-induced pleas upon its realization that it could not effectuate a supposed bargain.

On this record it is not clear to what extent, if any, the defendant's decision to plead guilty was prompted by the prosecutor's statement as to what sentence he would recommend or by the defendant's own independent consideration of the force of the evidence already introduced against him prior to the time of the discussion with the prosecutor. The court made no finding in this respect. While the result of that discussion may (as urged by the defendant) or may not be characterized as a "plea bargain," it will not be necessary to define that term here, as we do not limit the scope of the procedure hereinafter suggested to those agreements induced by or made in consideration of prosecutorial promises. We include those understandings as to a likely sentence recommendation that are communicated to a defendant after his independent decision to plead guilty, as well as situations between those extremes which involve varying degrees of reliance by a defendant.[2]

At the outset it should be pointed out that the defendant was under no illusion that the prosecutor's recommendation as to sentencing would be adopted. As the colloquy makes clear (fn. 1), the judge directed the defendant's attention to the fact that he would not be

---

[2] See *United States* v. *Frontero*, 452 F. 2d 406, 411-412 (5th Cir. 1971), for a discussion of the difficulty of ascertaining when an agreement as to plea has been made.

bound by any agreement arrived at between the defendant's counsel and the prosecuting attorney.

The defendant, while conceding that the prosecutor did what he had agreed to do, contends that the basic infirmity of the proceeding was that the prosecutor's agreement was not explicitly brought to the attention of the trial judge prior to sentencing. That failure to disclose the existence of an agreement meant, it is argued, that as a matter of law the judge could not decide, as he did, that the pleas were knowingly and voluntarily made, no matter how thorough his inquiry.

We believe that it would be a desirable procedure for both counsel to inform the trial judge of the existence and terms of any agreement or understanding reached with the prosecutor.[3] We suggest the use of such a procedure in the future. However, the mere failure to follow such a procedure is not ground for reversal. No prior decision has been called to our attention or found by us which holds that such a procedure is a necessary requirement for establishing the voluntariness of a guilty plea.

Of course, there must be safeguards to insure that the waiver by a plea of guilty of almost all the constitutional rights we deem fundamental is knowingly made, *Brady* v. *United States*, 397 U. S. 742, 748 (1970), and voluntary, *Machibroda* v. *United States*, 368 U. S. 487, 493 (1962). The record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. *Boykin* v. *Alabama*, 395 U. S. 238, 242 (1969).

However, in *Santobello* v. *New York*, 404 U. S. 257, 261-262 (1971), where the United States Supreme Court

---

[3] This procedure has been recommended by the American Bar Association Project on Minimum Standards for Criminal Justice. See Standards Relating to Pleas of Guilty, § 1.5 and 2.1 (Approved Draft, 1968); Standards Relating to the Function of the Trial Judge, § 4.1(c) (Approved Draft, 1972); and Standards Relating to the Prosecution Function and the Defense Function, § 4.3 (Approved Draft, 1971). See also Fed. R. Crim. P. 11(e) (to be effective August 1, 1975).

stated broadly that when a guilty plea is "induced by promises, the essence of those promises must in some way be made known," the court did not specifically require that any agreement be made part of the formal record.

Those Federal circuits which have directly considered this problem have prospectively required of their respective District Court judges that, as one way of satisfying the rationale of the *Santobello* case,[4] agreements as to pleas be spread on the record and publicly disclosed. Similarly, several State courts have prospectively required that counsel inform the court of the existence and nature of any agreement as to a plea.[5]

For example, the Pennsylvania Supreme Court, in so requiring, has noted that "the potential benefits of disclosure are substantial. The court would be on notice to instruct the possibly confused defendant that the prosecutor's recommendation or lack of recommendation is in no way binding on the court. Moreover, an on-the-record disclosure of the plea bargain would serve both to protect the defendant in the event that the prosecutor does not subsequently abide by the plea bargain and to protect the Commonwealth against later false claims of unkept bargains." *Commonwealth* v. *Alvarado*, 442 Pa. 516, 519 (1971). The court went on, however, to emphasize that the requirement would be prospective only. 442 Pa. at 519.

The real issue in cases like the present one is whether a waiver was knowingly and voluntarily made. See *Boy-*

---

[4] See *Paradiso* v. *United States*, 482 F. 2d 409, 412-413 (3d Cir. 1973), and *Walters* v. *Harris*, 460 F. 2d 988, 993 (4th Cir. 1972), cert. den. sub nom. *Wren* v. *United States*, 409 U. S. 1129 (1973); see also *United States* v. *Resnick*, 483 F. 2d 354, 358 (5th Cir. 1973), cert. den. 414 U. S. 1008 (1973), and *Mawson* v. *United States*, 463 F. 2d 29, 31 (1st Cir. 1972).

[5] See *Commonwealth* v. *Alvarado*, 442 Pa. 516, 519 (1971), and *People* v. *West*, 3 Cal. 3d 595, 611 (1970); see also *In re Lamphere*, 127 Vt. 604, 607 (1969), and *People* v. *Goodman*, 2 Ill. App. 3d 584, 587-588 (1972).

*kin* v. *Alabama*, 395 U. S. 238, 242-243 (1969); *Commonwealth* v. *Morrow*, 363 Mass. 601, 603 (1973). Even though the defendant was confronted with a difficult choice in uncertain circumstances, the record clearly warranted the judge's express finding that the defendant fully understood the possible consequences of his choice.[6] The record shows, in addition to detailed questioning, that the trial judge gave the defendant an opportunity to consult with his counsel in the midst of the inquiry into the voluntariness of the pleas, which the defendant did. The defendant was also afforded an opportunity to retract his pleas at that time.[7]

While the procedure suggested here may provide additional safeguards, and might reduce the number of post-conviction proceedings in this area,[8] on this record it is clearly established that the defendant's pleas were both knowingly and voluntarily made.

In support of his second assignment, the defendant argues that as he was not given information with regard to parole eligibility and received incorrect information from his counsel, he was unaware of the consequences of his plea and, therefore, that his pleas were involuntary as a matter of law. While the judge found that the defendant fully understood the questions put to him and that his responses were given voluntarily, he made no specific finding whether the defendant had in fact been given information (as he claimed) that he would serve no more than one year in a forestry camp or that he "would

---

[6] Compare *United States* v. *Cox*, 464 F. 2d 937, 942 (6th Cir. 1972), "It is also well established that a guilty plea is not rendered invalid because it represents a compromise by the defendant, thrusts a difficult judgment upon him, or is motivated by a fear of greater punishment."

[7] Compare *United States ex rel. Culbreath* v. *Rundle*, 466 F. 2d 730, 735 (3d Cir. 1972).

[8] See *Walters* v. *Harris*, 460 F. 2d 988, 993 (4th Cir. 1972); compare *McCarthy* v. *United States*, 394 U. S. 459, 465 (1969).

be out of jail in a short time." The judge was not required to believe any of the defendant's statements, and it was implicit in his general finding either that the information was in fact given to the defendant and that he knew that those predictions might not be realized, or that no such predicitions were made. In any event, such predictions by counsel as to the time which a defendant might have to serve or, for that matter, where he might have to serve it, form no basis for attacking a plea, particularly where the judge has advised the defendant that he is not bound by the prosecutor's recommendation, has advised the defendant of the maximum possible sentence, and has made an express finding that the plea has been offered knowingly and voluntarily. See *Commonwealth* v. *Morrow,* 363 Mass. 601, 606-607 (1973); *Domenica* v. *United States,* 292 F. 2d 483, 485 (1st Cir. 1961); *United States* v. *Webb,* 433 F. 2d 400, 403-405 (1st Cir. 1970), cert. den. 401 U. S. 958 (1971). The limitations on, or requirements for, parole (G. L. c. 127, §§ 128-151) are but "contingent consequences of being confined." *Commonwealth* v. *Morrow, supra,* at 606. The judge was not required to advise the defendant on the legal and practical complexities of the parole law. This was not a situation in which it had become apparent that the defendant was concerned with his eligibility for parole and misunderstood his rights with respect thereto.

*Judgment affirmed.*