COMMONWEALTH *vs.* JOSEPH STEPHEN PERRY.

Suffolk.  April 6, 1983. — June 14, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Plea, Assistance of counsel, Defendant's competency.

Evidence before a judge on motions to withdraw a plea of guilty to murder in the second degree warranted the judge's conclusion that the defendant's guilty plea was made voluntarily and with understanding despite the defendant's poor educational background and his emotional state at the time of the plea. [467-468]

An error by defense counsel in explaining the elements of murder in the second degree in reference to the requirement of malice did not preclude a defendant from intelligently pleading guilty to murder in the second degree, where the judge properly described the elements of murder in the second degree when he accepted the defendant's plea. [468-469]

In the circumstances certain errors by defense counsel in advising a defendant concerning the respective penalties for first and second degree murder did not require a conclusion that the defendant's guilty plea to second degree murder was made involuntarily or without understanding. [469-471]

The record on motions to withdraw a plea of guilty to murder in the second degree did not support the defendant's contention that he had entered his guilty plea involuntarily and without understanding as a result of ineffective assistance of counsel. [471-472]

INDICTMENT found and returned in the Superior Court Department on September 4, 1980.

Motions for leave to withdraw a plea of guilty were heard by *Irwin,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Thomas J. Butters* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Joseph S. Perry, appeals from a Superior Court judge's denial of his motions to withdraw his plea of guilty of murder in the second degree and for a new trial. The defendant asserts that his plea was involuntary, due to his highly emotional state and poor understanding of English, his lack of understanding of the element of malice, his incorrect understanding of the penalty he faced for murder, and due to ineffective assistance of counsel. We transferred the case on our own motion. We reject the defendant's claims and affirm the orders of the Superior Court judge.

We summarize the facts. In February, 1980, August Viden was killed in Boston. The police were unable to trace his assailant. The defendant was a long time friend of Viden's wife, and lived with her after her separation from her husband in the spring of 1979. The defendant and Viden's wife moved to New Hampshire in the late spring or early summer of 1980. On the evening of August 25, 1980, the defendant confessed to the New Hampshire police, in some detail, that he had murdered Viden. He was arrested and transferred to a jail in Massachusetts. He was later indicted for murder in the first degree.

The defendant entered a plea of not guilty in the Superior Court. He moved to suppress his confession and other statements on the grounds that he was under the influence of alcohol, drugs, and stress at the time he made his confession, that he lacked the capacity to read the confession he signed, that there was a lapse of an inordinately long time between the reading of his Miranda warnings and his statements to New Hampshire police after he was charged with murder, and that the New Hampshire police took advantage of his trust in them. The judge denied the motion to suppress on February 10, 1981.

Later that day, the defendant changed his plea to one of guilty of murder in the second degree. The parties agree that the judge conducted a commendably thorough voir

dire with the defendant in his understanding of and the voluntariness of his guilty plea. The judge accepted the plea and sentenced the defendant to life imprisonment at the Massachusetts Correctional Institution, Walpole.

Seven months later, the defendant filed a pro se motion to withdraw his guilty plea and for a new trial, based primarily on the ineffective assistance of his counsel, and on the defendant's poor understanding of English.[1] The judge denied the motion after a hearing, and the defendant appealed. In the summer of 1982, almost a year after his initial motion to withdraw his plea, the defendant filed a motion to reconsider the denial of that motion, based on the defendant's emotional state at the time of his plea. The defendant amended the motion to reconsider to include three exhibits supporting his contention. The judge denied the motion, and the defendant appealed. The two appeals were consolidated.

The judge made findings of fact[2] and ruled that the "pleas were understandingly and voluntarily made." He also ruled that "there was no showing that [Perry] lacked a fair understanding of the alternatives available to him, nor that [Perry] failed to make a rational choice in the light of that understanding." The judge further concluded that there was no showing of coercion or ineffective assistance of counsel.

Where, as here, the findings of the judge are based in large measure on his conclusions as to the credibility of the witnesses and where they are supported by the evidence, they are not lightly to be overturned on appeal. See *Commonwealth* v. *Angivoni,* 383 Mass. 30, 33 (1981); *Commonwealth* v. *Brown,* 378 Mass. 165, 171 (1979). We conclude that there was no error in the denial of the defendant's motions.[3]

---

[1] The defendant has another attorney on appeal.

[2] These facts are presented in our discussion of the issues.

[3] The defendant argues that the Commonwealth must establish a defendant's voluntary waiver of constitutional rights made in conjunction

1. *Educational and emotional background.* The defend-
ant asserts that we should evaluate his plea as involuntary
due to his poor educational background and his emotional
state at the time. While these may be important character-
istics to consider, see *Commonwealth* v. *Tavares,* 385 Mass.
140, 145-146 (1982); *Commonwealth* v. *Meehan,* 377 Mass.
552, 567-568 (1979), the facts as found by the judge do not
support the defendant's contentions.[4]

The defendant relies heavily on a psychiatric evaluation
of him, which states that several weeks before the plea "his
insight and judgment [were] seriously deficient, particular-
ly around his acknowledgement of his alcoholism and pos-
sibly around his handling of other matters currently." How-
ever, the psychiatrist found that the defendant was able to
concentrate and think, and that there was no basis for an in-
sanity defense nor were there any serious mental conditions.
The psychiatrist concluded that the defendant was compe-
tent to stand trial. We have held that the competence nec-
essary to plead guilty is similar to that for standing trial.
*Commonwealth* v. *Hubbard,* 371 Mass. 160, 170 (1976).
*Commonwealth* v. *Leate,* 367 Mass. 689, 696 (1975). See

---

with a guilty plea beyond a reasonable doubt. The defendant's motions
do not specifically raise any issues as to the standard of proof the Com-
monwealth must meet before the judge may accept a plea as voluntary.
"An issue not fairly raised before the trial judge will not be considered for
the first time on appeal." *Commonwealth* v. *Marchionda,* 385 Mass.
238, 242 (1982). *Commonwealth* v. *Lewis,* 346 Mass. 373, 383 (1963),
cert. denied, 376 U.S. 933 (1964). We therefore do not reach this issue.
We add that in accepting Perry's plea the judge fulfilled the function re-
quired of him by *Boykin* v. *Alabama,* 395 U.S. 238 (1969), of closely and
carefully questioning the defendant to create a record demonstrating that
the plea was intelligent and voluntary at the time it was entered.

[4] The defendant's arguments concerning his emotional state were raised
in his motion to reconsider the denial of the motion to withdraw his guilty
plea. At oral argument, the Commonwealth contended that we should
not consider these claims because they were waived by the defendant's
failure to raise them with his initial motion, pursuant to Mass. R. Crim.
P. 30 (c) (2), 378 Mass. 900 (1979). However, as the prosecutor did not
object to the judge's consideration of the defendant's further contentions,
we therefore address the defendant's claims.

*Allard* v. *Helgemoe,* 572 F.2d 1, 3 (1st Cir.), cert. denied, 439 U.S. 858 (1978).

The defendant also argues that he was highly emotional at the time of his plea, and that his ability to plead was affected by medications he had taken. However, at the hearing on his motion, the defendant stated that he understood the judge's questions, and that, while he took antidepressant medication at night, he could understand the proceedings and was not on that medication at the time of his plea. The judge found that the defendant "was not so upset as to be incapable of understanding the proceedings in which he was participating."

Finally, although the defendant admitted to having problems with written English, he had completed up to the ninth grade and had very little problem with spoken English unless the words were "too big" for him. Since he told the judge when he did not understand the proceedings, it can be assumed that he understood the pleading process the rest of the time.

2. *Element of malice.* The defendant contends that he did not understand the element of malice for murder in the second degree. Not only does he refer to his emotional state and educational background in this regard, but he claims that malice was never clearly described to him. At the hearing on the motion, the defendant's trial attorney stated that he had advised the defendant that second degree murder was the "deliberate, premeditated killing of an individual without malice." This statement of the elements was erroneous, although, as it imported elements of first degree murder into the definition, it was harmless error only, for the defendant's willingness to plead on that basis suggested that the defendant might have pleaded guilty to more than murder in the second degree.

In any event, whatever the defendant's understanding of the elements from his attorney, the judge properly described the elements of murder in the second degree when he accepted the defendant's plea. The judge told him the Commonwealth must prove that he committed "an intentional,

unlawful killing with malice," and that the killing was "without any justification," but was "with thought and with intention." The defendant told the judge he did not understand that definition. The judge responded that it meant that the defendant did not kill Viden accidentally, but that "you [the defendant] decided and determined that you were going to inflict serious injury and death on him and you went ahead and did do that." The defendant then stated that he understood.

The judge's description of the elements of second degree murder was sufficient. The judge described malice in terms understandable to the defendant. The record supports the judge's conclusions that the defendant understood the definition and voluntarily pleaded guilty to murder in the second degree based on the judge's description of the crime.[5]

3. *Penalty for murder in the second degree.* The defendant also states that he relied on inaccurate advice by his counsel regarding the penalties for first and second degree murder. At the hearing on the initial motion, the defendant's attorney stated that he told the defendant that second degree murder was punishable by life imprisonment with parole eligibility after fifteen years, and that he would probably serve only twelve years. He told the defendant that first degree murder was punishable by life imprisonment, and that the sentence might be commuted by the Governor after the fifteenth year. The attorney also said

---

[5] In *Henderson v. Morgan*, 426 U.S. 637, 646 (1976), a plea was determined to be involuntary because the defendant did not admit either to facts or to a description of the elements of second degree murder. The Court thus determined that the defendant may not have had the requisite intent because he did not have "real notice of the true nature of the charge against him." *Id.* at 645, quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Unlike the defendant in *Henderson*, the defendant here pleaded guilty after the judge clearly explained the elements of second degree murder to him. See *Commonwealth v. Sullivan*, 385 Mass. 497 (1982); *Commonwealth v. Swift*, 382 Mass. 78 (1980); *Commonwealth v. Huot*, 380 Mass. 403 (1980); *Osborne v. Commonwealth*, 378 Mass. 104 (1979); *Commonwealth v. McGuirk*, 376 Mass. 338 (1978), cert. denied, 439 U.S. 1120 (1979). See also *McGuirk v. Fair*, 622 F.2d 597 (1st Cir.), cert. denied, 449 U.S. 882 (1980).

that, initially, he told the defendant that the defendant could receive the death penalty, but later told him that it had been struck down as unconstitutional. The judge found that "the defendant had been adequately apprised by his attorney . . . of the penalty for first-degree murder in this Commonwealth."

The attorney's analysis of the length of sentence the defendant might serve for second degree murder was not quite accurate. By statute, parole is only available to a person convicted of murder in the second degree who has served fifteen years in prison. See G. L. c. 265, § 2, as appearing in St. 1982, c. 554, § 3; G. L. c. 127, § 133A, as amended through St. 1982, c. 108, § 2. Counsel also spoke only from experience when he estimated the length of time in which a sentence for first degree murder might be commuted, as the statute sets no time limit. See G. L. c. 127, § 152. However, while his advice may have been incorrect, it was not unduly persuasive in favor of a second degree murder plea, nor did it inaccurately represent the relative differences between the sentences.

The defendant asserts that the advice he was given was even more inaccurate than the attorney admitted at the hearing. The defendant claims that counsel told him that he would only serve twelve years for second degree murder. The defendant also claims his attorney told him that he might face the death penalty if he went to trial. This assertion is contrary to the judge's finding that the defendant was "adequately apprised by his attorney . . . of the penalty for first-degree murder." Further, the record shows that the judge correctly told the defendant that the penalty for second degree murder was not discretionary, and was life imprisonment with a possibility of parole in fifteen years. The defendant stated at that time, and later at the hearing on his motion, that he understood the judge, and that he realized the maximum sentence for second degree murder was life imprisonment.

When he decided the motions, the judge had the responsibility of evaluating the credibility of the witnesses when

they presented conflicting testimony. *Commonwealth* v. *Leate*, 367 Mass. 689, 694 (1975). The judge found that the defendant had adequate notice of the penalty he faced. "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady* v. *United States*, 397 U.S. 742, 757 (1970). *Commonwealth* v. *Morrow*, 363 Mass. 601, 607 (1973). We conclude that defense counsel's advice was not so damaging as to undermine the defendant's decision to plead guilty understandingly and voluntarily.

4. *Advice of counsel.* The defendant finally claims that his counsel's advice was generally ill-advised. Not only does he claim that the attorney gave the defendant incorrect advice, as discussed above, but the defendant claims that his attorney failed to discuss the possibility of a manslaughter defense with him in depth. The defendant also claims that his counsel failed to tell him that after pleading guilty he could not appeal the judge's denial of the suppression of his confession. In addition, the defendant asserts that counsel told him to answer the judge's questions without causing any trouble. Defense counsel disputed some of these assertions,[6] and the judge found counsel's testimony credible.

In this case, there was no "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," nor did the attorney's work deprive "the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant has raised nothing which would indicate that the work of his counsel fell to

---

[6] The defense attorney stated that he had discussed the possibility of a manslaughter conviction with the defendant, and that he informed the defendant that by pleading guilty he would forgo his right to appeal the denial of his motion to suppress. The record shows that the defendant understood he was waiving important rights by pleading. Finally, the defense attorney clearly denied that he told the defendant not to cause trouble with the judge.

such a low standard.[7] Further, the defendant "may not collaterally impeach his guilty plea by asserting that his attorney misjudged" the possibilities he faced. *Olles* v. *United States,* 570 F.2d 817, 819 (8th Cir. 1978). See *Commonwealth* v. *Sullivan,* 385 Mass. 497, 505-506 (1982). The record at the time of the plea demonstrates that the defendant was thoroughly informed about the consequences of his decision to plead guilty.

We conclude that the judge did not err in declining to permit the defendant to withdraw his plea of guilty of murder in the second degree. The orders denying the defendant's motions to withdraw his guilty plea, and for a new trial, are affirmed.

*So ordered.*

---

[7] The defendant claims that he spent very little time with his counsel. However, the records of Charles Street Jail show that the attorney visited his client a total of fourteen times between September 10 and October 2, 1980, and between January 29 and February 8, 1981.