APPEALS COURT 
 
 COMMONWEALTH vs. DAVID A. DELRATEZ

 
 Docket:
 24-P-911
 
 
 Dates:
 May 5, 2025 – October 30, 2025
 
 
 Present:
 Singh, D'Angelo, & Hodgens, JJ.
 
 
 County:
 Berkshire
 

 
 Keywords:
 Homicide. Practice, Criminal, Plea, Sentence, Assistance of counsel, Waiver. Constitutional Law, Plea, Sentence, Assistance of counsel. Due Process of Law, Plea, Sentence, Assistance of counsel. Waiver.
 
 

  
      Indictments found and returned in the Superior Court Department on October 18, 2013.
      A motion to withdraw a plea of guilty, filed on October 25, 2023, was heard by John A. Agostini, J.
Suzanne Lynn Renaud for the defendant.
      Lori H. Levinson, Assistant District Attorney, for the Commonwealth.
      HODGENS, J.  In 2014, the defendant pleaded guilty to a reduced charge of murder in the second degree and agreed to a sentence of life with an "initial parole eligibility date" of fifteen years.  Nine years after the judge imposed the agreed-upon sentence, the defendant filed a motion to withdraw the plea and alleged that counsel misadvised him that earned good time credit would accelerate the parole eligibility date.  The motion judge, who was also the plea judge, denied the motion after a hearing, and the defendant appeals.  We affirm.
      Background.  Based on the plea colloquy, the defendant (age forty-three) admitted that on September 17, 2013, he murdered eighty-four year old Ellen DePaoli in the bedroom of her North Adams home by repeatedly stabbing and beating her to death.  After killing her, he took her pocketbook and fled in her car.  He knew the victim and her son who lived in the home.  Soon after the son arrived home and found his mother's body, the police searched for the defendant, learned that a witness saw the defendant driving alone in the victim's car, and traced the movement of the defendant's cell phone to Vermont.  As the police closed in, the defendant ran behind some homes where officers pursued and apprehended him.  He had the victim's car keys in his possession and spontaneously admitted "that he loved the old woman.  I hurt that woman and I saw it on her face."  He acknowledged knowing her, visiting her often, and previously staying overnight in her home where they had shared dinner.  He thought that she was "awesome."  He said that he "was a drunk and a drug user" and requested, "[J]ust take me to jail."  Officers recovered the victim's car near an apartment where the defendant had stayed, and they found within the car the defendant's clothing that tested positive for blood.
      A grand jury returned indictments for murder (G. L. c. 265, § 1) and larceny of a motor vehicle (G. L. c. 266, § 28 [a]).  In connection with another, unrelated incident that happened days before the murder and involved two additional victims, the same grand jury returned indictments for breaking and entering with intent to commit a misdemeanor (G. L. c. 266, § 16A), use of a motor vehicle without authority (G. L. c. 90, § 24 [2] [a]), and larceny over $250 (G. L. c. 266, § 30 [1]).
      Just over one year after the killing, at a hearing on October 28, 2014, the defendant offered a change of plea as part of a global disposition of the pending indictments.  Defense counsel (plea counsel) informed the judge that the parties reached an "[a]greed upon" recommendation.  On the lead charge, the defense and the prosecution asked the judge to entertain a guilty plea to a reduced charge of murder in the second degree with a "15 year eligibility date.  So essentially 15 to life."  See St. 2012, c. 192, § 46, amending G. L. c. 279, § 24 (when imposing life sentence for murder in second degree, "court shall fix a minimum term which shall be not less than 15 years nor more than 25 years").  They also agreed to enter a nolle prosequi on the larceny over $250 charge and concurrent sentences of from three to four years for larceny of a motor vehicle, six months for breaking and entering with intent to commit a misdemeanor, and two years for use of a motor vehicle without authority.  The prosecutor outlined the maximum available sentences for each charge as well as the "mandatory sentence of life" for murder.  At the judge's request, the clerk indicated that the defendant would receive 404 days of credit for pretrial custody.
      During a colloquy with the judge regarding his background and his understanding of the rights being waived by a guilty plea, the defendant acknowledged that he had "hear[d] the joint recommendation that's being made with respect to this sentence."  The judge told the defendant that he would not exceed that joint recommendation without giving him a chance to withdraw the plea.  Plea counsel also confirmed to the judge that he had "explained to [the defendant] the sentences including any potential mandatory minimums."  The defendant further acknowledged that he was pleading guilty "because [he is] guilty and for no other reason."
      After agreeing to the facts of the crimes as outlined by the prosecutor and engaging in an additional colloquy with the judge, the defendant pleaded guilty to a reduced charge of murder in the second degree as well as to the other pending indictments.  The prosecutor presented eight victim impact statements.  Plea counsel urged the judge to adopt the joint recommendation on the murder conviction and stated that the defendant accepted responsibility, "is truly sorry for what he did," and did "not want to cause any more harm."  The judge stated, "I think this is a fair recommendation for this particular case.  I expect that the defendant may not get out of jail during his lifetime."  When asked by the judge about the parole eligibility date, the prosecutor responded, "Yes, Your Honor, it is a life sentence.  The only thing that the law has changed that the Court can announce anywhere between 15 to 25 years for eligibility date.  So essentially it's life with parole eligibility at 15 years."  Plea counsel and the prosecutor then confirmed the joint recommendation.  Accepting the joint recommendation, the judge sentenced the defendant on the murder conviction to a life sentence with an "initial parole eligibility date" of fifteen years and sentenced him as agreed on the remaining offenses.
      Nine years later, on October 25, 2023, while represented by new counsel, the defendant filed his motion to withdraw the plea to murder in the second degree (making no reference to the other guilty pleas).  Citing a single case, Commonwealth v. Najjar, 96 Mass. App. Ct. 569 (2019), the defendant argued in his motion that "mis-advice by counsel as to the opportunity to earn good time so as to reduce the minimum sentence to be served entitles a defendant to withdraw his plea as not knowing, intelligent and voluntary."  In an affidavit filed in support of the motion, the defendant asserted that plea counsel had misadvised him that good time credit would reduce his parole eligibility date below the fifteen-year minimum term set by the judge.  He further asserted that he would not have pleaded guilty had he known such credit was unavailable.  Plea counsel, having retired from the practice of law, signed an affidavit stating that one month after following the defendant's instructions and striking a deal with the prosecutor, he responded to the defendant's question about good time credit and "told him he could [earn good time] as the good time reduces the parole eligibility date of 15 years."  Plea counsel further asserted that he provided this advice several weeks before the change of plea hearing and "[t]he length of the minimum was important" to the defendant.
      At a hearing on the motion, the judge invited the defense to offer testimony and noted, "[M]y focus on this case was on the Najjar case, because that's the case you're relying on to allow this to go to a new trial.  So, that's been my focus.  It's really been a legal focus."  Defense counsel declined to present testimony, stated that "there would be no necessity for an evidentiary hearing," and relied on the affidavits.  The Commonwealth agreed that the case could be decided on the affidavits.  Following the hearing, the judge denied the motion.  He concluded that the Najjar case did not require withdrawal of the guilty plea and reasoned that plea counsel's advice regarding good time credit constituted a "collateral consequence" that did not render the guilty plea involuntary or unintelligent.
      Discussion.  A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), see Commonwealth v. Scott, 467 Mass. 336, 344 (2014), and may be granted only "if it appears that justice may not have been done."  Rule 30 (b).  Judges must apply the rule 30 (b) standard "rigorously, and should only grant a postsentence motion to withdraw a plea if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth."  Commonwealth v. Wallace, 92 Mass. App. Ct. 7, 10 (2017), quoting Commonwealth v. Fanelli, 412 Mass. 497, 504 (1992).  Particular deference is owed to the motion judge where, as in this case, he was also the plea judge.  See Commonwealth v. Sylvester, 476 Mass. 1, 6 (2016).  Absent "a significant error of law or other abuse of discretion," the denial of a motion to withdraw a guilty plea must stand (citation omitted).  Id. at 5.  We discern no error by the judge.
      Contrary to the defendant's single contention, "'inaccurate or incomplete advice' from counsel does not automatically render a plea involuntary or unintelligent."  Commonwealth v. Minon, 102 Mass. App. Ct. 244, 250 (2023), quoting Commonwealth v. Indelicato, 40 Mass. App. Ct. 944, 945 (1996).  "That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination . . . ."  McMann v. Richardson, 397 U.S. 759, 770 (1970).  Accord Commonwealth v. Morrow, 363 Mass. 601, 607 (1973).  Indeed, a plea may be intelligently made despite incorrect advice by defense counsel on a range of issues.  See, e.g., Commonwealth v. Santiago, 394 Mass. 25, 25-26, 29 & n.5 (1985) (misadvice on parole eligibility); Commonwealth v. Perry, 389 Mass. 464, 469-470 (1983) (misadvice on penalties and parole eligibility); Minon, 102 Mass. App. Ct. at 244, 250 (misadvice on sex offender registration); Indelicato, 40 Mass. App. Ct. at 944-945 (misadvice on future right to possess or carry firearms); Commonwealth v. Cepulonis, 9 Mass. App. Ct. 302, 309-310 (1980) (misadvice on parole eligibility); Commonwealth v. Stanton, 2 Mass. App. Ct. 614, 622 (1974) (misadvice "as to the time which a defendant might have to serve" on sentence).  These cases illustrate that a plea is not necessarily rendered unintelligent because counsel has provided incorrect advice, particularly regarding prognostications about potential release on parole.  Thus, even if plea counsel here erred by privately telling the defendant that he would be parole eligible in less than fifteen years due to earned good time credit, given this great weight of authority and our review of the plea colloquy, we discern no error in the judge's denial of the defendant's motion.
      Our holding in Najjar does not call for a contrary result.  At the hearing on the motion, the defendant relied exclusively on that case and argued it stands for the proposition that "mis-advice by counsel as to the opportunity to earn good time so as to reduce the minimum sentence to be served entitles a defendant to withdraw his plea."  He makes the same argument on appeal and contends that the present case "precisely parallels" Najjar.  We disagree with both the defendant's expansive reading of Najjar and the suggestion that the case parallels the facts presented here.
      In Najjar, we never said that misadvice, standing alone, entitled a defendant to withdraw a plea.  Nor could we do so without first undertaking a rigorous inquiry into "all of the relevant circumstances" of the plea.  Brady v. United States, 397 U.S. 742, 749 (1970).  See Commonwealth v. DeMarco, 387 Mass. 481, 487 (1982), quoting rule 30 (b) (motion to withdraw plea should be allowed "only 'if it appears that justice may not have been done'").  As the judge noted, the facts in Najjar are quite distinguishable.  In Najjar, prior to a change of plea, a prosecutor mistakenly informed a pro se defendant that he would only have to serve roughly half of an eight-year mandatory minimum sentence before becoming eligible for parole.  Najjar, 96 Mass. App. Ct. at 572.  At the change of plea hearing, the prosecutor also mistakenly suggested that good time credit would be available, and during the colloquy with the pro se defendant the judge "failed to articulate the mandatory minimum sentence" of eight years that would have to be served.  Id. at 572-573.  This repeated misinformation, never corrected, created the possibility that the pro se defendant pleaded guilty without knowing that "he would be subject to a [mandatory] minimum sentence of eight years" in prison.  Id. at 572.  Thus, we remanded for further proceedings.
      Contrasted with the mistaken and uncorrected information conveyed to the pro se defendant in Najjar before and during the plea hearing, the record here supports the judge's conclusion that the defendant tendered a knowing and voluntary plea.  This is not a case where the defendant was blindsided as in Najjar.  See Santobello v. New York, 404 U.S. 257, 262 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"); Santiago, 394 Mass. at 28.  Unlike the unwitting pro se defendant in Najjar who was misled by the prosecutor, the defendant here, through plea counsel, proposed the very sentence that he now protests and urged the judge to adopt it as part of a joint recommendation with the prosecution in a global resolution of all pending indictments, including a charge concession that avoided a life sentence without parole for murder in the first degree.  See G. L. c. 265, §§ 1, 2 (a).  Also, unlike the contradiction between the bargain struck with the prosecutor and the sentence later imposed by the judge in Najjar, the fulsome colloquy here, including the accurate discussion of a mandatory life sentence and a fifteen-year parole eligibility date, left no reasonable room for misunderstanding:  the defendant here acknowledged that he heard the attorneys request a "mandatory sentence of life" with a "15 year eligibility date"; the judge informed the defendant that he would not exceed that joint recommendation without giving him a chance to withdraw the plea; the prosecutor accurately stated the maximum available sentences for each charge and the "mandatory sentence of life" for murder; plea counsel confirmed that he had "explained to [the defendant] the sentences including any potential mandatory minimums"; and at the conclusion of the colloquy, the judge said that he would "accept that joint recommendation for the initial parole eligibility date" and imposed the requested sentences.  See Santiago, supra ("only a defendant's 'reasonable expectations' surrounding a plea bargain are protected").  Put succinctly, "[t]he defendant received the result he bargained for."  Id. at 31.  See DeMarco, 387 Mass. at 483 n.5, quoting Matter of Troglin, 51 Cal. App. 3d 434, 438 (1975) ("It seems reasonable and just, at least where no public policy, or statutory or decisional or constitutional principle otherwise directs, that the accused also be held to his agreement").
      In Perry, 389 Mass. at 471-472, the Supreme Judicial Court rejected a similar claim to the one raised here.  In that case "the defendant's attorney stated that he told the defendant that second degree murder was punishable by life imprisonment with parole eligibility after fifteen years, and that he would probably serve only twelve years."  Id. at 469.  Despite this erroneous prediction, the plea was neither involuntary nor unintelligent because at the change of plea hearing "the judge correctly told the defendant that the penalty for second degree murder was not discretionary, and was life imprisonment with a possibility of parole in fifteen years."  Id. at 470.  As in Perry, the statements of the prosecutor and plea counsel on the record and the judge's colloquy correctly informed the defendant that he would not become parole eligible until serving a fifteen-year sentence.  In light of the entirety of the colloquy that should have disabused the defendant of any unexpressed hope he might serve less than fifteen years before reaching parole eligibility, the judge could properly have concluded that any prior erroneous prediction about good time credit "was not so damaging as to undermine the defendant's decision to plead guilty understandingly and voluntarily."  Id. at 471.  See Cepulonis, 9 Mass. App. Ct. at 310 ("parole as a rehabilitative technique is highly dependent on a variety of discretionary factors" that are beyond scope of plea colloquy); Stanton, 2 Mass. App. Ct. at 622 (colloquy may show intelligent and voluntary plea despite inaccurate "predictions by counsel as to the time which a defendant might have to serve").
      "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision."  Brady, 397 U.S. at 757.  A defendant pleading guilty must have an awareness of the "likely consequences" of the plea.  Id. at 748.  The premise of the defendant's claim is that he changed his plea in ignorance because plea counsel misled him about the consequences of earned good time credit and release under parole supervision.  Both earned good time credit and release on parole supervision, however, are not likely consequences but only possible, contingent consequences that are beyond the control of the sentencing judge and rest within the discretion of executive authorities responsible for evaluating, among other factors, the defendant's postsentencing conduct while in custody.  See, e.g., G. L. c. 127, § 129D (based on satisfactory conduct certain "[p]risoners are eligible to earn deductions from sentences and completion credits, collectively known as good conduct deductions, for participation in and completion of [designated] programs and activities"); G. L. c. 127, § 130 (parole permits "shall be granted only if the [parole] board is of the opinion, after consideration of a risk and needs assessment, that there is a reasonable probability that, if the prisoner is released with appropriate conditions and community supervision, the prisoner will live and remain at liberty without violating the law and that release is not incompatible with the welfare of society").  For a plea to be intelligent, "in this Commonwealth the judge need not provide that information" constituting "'contingent consequences of being confined.'"  Santiago, 394 Mass. at 30, quoting Stanton, 2 Mass. App. Ct. at 622.
      Finally, we address an alternative approach raised by the dissent -- that the plea colloquy was deficient because the judge should have expressly told the defendant that the fifteen-year parole eligibility date constituted a mandatory minimum sentence.  See Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 442 Mass. 1513 (2004) (judge must inform defendant of "mandatory minimum sentence").  We note that the defendant did not raise this argument in his motion for a new trial or his principal brief and only alluded to it in his reply brief.  "Arguments not raised in a motion for a new trial and arguments raised for the first time in a reply brief are waived."  Commonwealth v. Hampton, 64 Mass. App. Ct. 27, 33 n.8 (2005); Mass. R. A. P. 16 (c), as appearing in 481 Mass. 1628 (2019) ("No new issues shall be raised in the reply brief"); Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001) (grounds for relief are waived if not "raised by the defendant in the original or amended motion").  See Santiago, 394 Mass. at 31 (defendant waived argument "that the judge's failure to adhere strictly to the procedural outline of [Mass. R. Crim. P.] 12 requires relief").  Since it was not raised in any of the defendant's motions or at any of the hearings, the argument is waived.
      Beyond this dispositive procedural infirmity, we disagree with the dissent's view for several additional reasons.  First, "it is not every omission of a particular from the protocol of the rule that entitles a defendant at some later stage to negate his plea and claim a trial."  Commonwealth v. Nolan, 19 Mass. App. Ct. 491, 495 (1985).  See Commonwealth v. Clerico, 35 Mass. App. Ct. 407, 413 (1993) (even were there technical violation of procedural rule, real issue is whether plea was knowing and voluntary).  Second, in the context of the entire colloquy, the defendant acknowledged that he was facing a "mandatory sentence of life" with parole eligibility in fifteen years.  Although not couched in the language of rule 12 as a "mandatory minimum sentence," the fifteen-year parole eligibility date logically communicated to the defendant that he would not be considered for release until he served fifteen years.  See Nolan, supra at 496 ("deviation from rule 12 did not significantly affect the substance of the particular requirement"); Commonwealth v. Brown, 6 Mass. App. Ct. 844, 844 (1978) (plea judge not required to explain inapplicability of "good time deductions").  Third, a voluntary and intelligent plea is not determined by the nomenclature assigned to a particular sentence during a colloquy.  See Commonwealth v. Hiskin, 68 Mass. App. Ct. 633, 638 (2007) ("plea is intelligent when made with understanding of the nature of the charges [understanding of the law in relation to the facts] and the consequences of his plea [the legal consequences and constitutional rights he forgoes by pleading guilty rather than proceeding to trial]").  Whether he calculated the fifteen-year period as a "parole eligibility date" or as a "mandatory minimum sentence," the defendant understood from the colloquy that he would have to serve fifteen years before reaching his earliest potential release date.  Thus, the record shows that he understood the sentencing consequence of his plea.
      If guilty plea colloquies were nothing more than "stylized and empty formalities," Hiskin, 68 Mass. App. Ct. at 640, then we would agree with the dissent's view because the record shows that the judge never expressly equated the fifteen-year parole eligibility date with a "mandatory minimum sentence."  We believe, however, that a plea colloquy is more than just "a prearranged script" that must be mechanically recited with perfection, Morrow, 363 Mass. at 605, and our review of the record requires more than just looking for magic words uttered by the plea judge.  Our obligation is to determine whether the judge "canvass[ed] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."  Boykin v. Alabama, 395 U.S. 238, 244 (1969).  Here, the entirety of the plea colloquy, allowing for the necessary "spontaneity and flexibility of the dialogue" between the judge and the defendant, Morrow, supra, shows that the defendant agreed with compelling facts showing he murdered an elderly victim and tried to evade capture, obtained a charge concession that avoided a mandatory life sentence without parole, proposed through plea counsel the lowest possible sentence and urged its adoption, acknowledged that he heard the agreed-upon recommendation made by counsel and the prosecutor, wrapped up two unrelated cases in a global resolution that included a nolle prosequi and concurrent sentences, and understood that he would not be parole eligible until serving fifteen years.  See Brady, 397 U.S. at 749 (validity of plea is assessed by "considering all of the relevant circumstances surrounding it").  Giving due deference to the motion judge who also participated in the colloquy with the defendant, we are satisfied that the judge here discharged his duty to make sure the defendant's guilty plea was voluntary and intelligent.
Order denying motion to withdraw guilty plea affirmed.
      D'ANGELO, J. (dissenting).  The majority holds that the defendant's plea was intelligent and voluntary in spite of the fact that (1) the defendant was never made aware during the plea hearing that he was pleading to a mandatory minimum sentence[1] and (2) prior to the plea hearing the defendant specifically asked his plea counsel whether he could obtain good time credit and his plea counsel misadvised him that "the good time reduces the parole eligibility date of 15 years."[2]  In such circumstances, the defendant's right to due process was violated because his plea was not intelligent and voluntary, and therefore, I dissent from the majority's decision and would reverse the denial of the defendant's motion for a new trial.
      Relevant background.  In August 2014, after multiple plea negotiations with the Commonwealth, the defendant agreed to plead guilty to murder in the second degree in exchange for a sentence of life with parole eligibility in fifteen years.  At some point prior to the plea hearing, the defendant specifically asked his plea counsel if he could "earn good time on a fifteen year to life sentence."  His plea counsel told him that "he could as the good time reduces the parole eligibility date of 15 years."[3]
      At the defendant's plea hearing, the Commonwealth explained the joint recommendation as follows:
"a second degree count of murder, there is a mandatory term -- I'm sorry, a mandatory sentence of life, and it will be a joint request under the new sentencing provisions of 15 year eligibility date.  So essentially 15 to life" (emphasis added).
The plea colloquy continued,  and the judge asked plea counsel, "Have you also explained to [the defendant] the sentences including any potential mandatory minimums?"  Plea counsel answered, "Yes, I have, Your Honor."  The defendant pleaded guilty to so much of the indictment as alleged murder in the second degree as well as all the other charges.  The judge subsequently said in pertinent part,
"I'm going to accept the joint recommendation. . . .  I think this is a fair recommendation for this particular case.  I expect that the defendant may not get out of jail during his lifetime, . . . so I will accept the joint recommendation and if you could waive whatever fees on that . . . parole eligibility, is that correct?"
The Commonwealth responded,
"Yes, Your Honor, it is a life sentence.  The only thing that the law has changed that the Court can announce anywhere between 15 to 25 years for eligibility date.  So essentially it's life with parole eligibility at 15 years."
The judge replied, "It's my understanding the joint recommendation was 15 years?"  The Commonwealth confirmed, "Yes," and the judge stated, "I will accept that joint recommendation for the initial parole eligibility date."
      There was never any discussion that the defendant was ineligible for good time or any other possible reductions.
      Discussion.  1.  Sentencing scheme of murder in the second degree.  General Laws c. 265, § 2 (c), provides the penalty for murder in the second degree:
"Any person who is found guilty of murder in the second degree shall be punished by imprisonment in the state prison for life and shall be eligible for parole after the term of years fixed by the court pursuant to [G. L. c. 279, § 24]" (emphasis added).[4]
      Thus, the charge of murder in the second degree mandates a life sentence, but unlike murder in the first degree, the judge sets the term of years at which the defendant will become eligible for parole.  While prisoners in Massachusetts are generally eligible for earned good time credit, see G. L. c. 127, §§ 129C, 129D; 103 Code Mass. Regs. § 411.09 (2004), a prisoner serving a life sentence for murder is not eligible for earned good time credit "unless the sentence is commuted or otherwise revised to a term of years."  103 Code Mass. Regs. § 411.07 (2004).
      "When I see a bird that walks like a duck, swims like a duck, and quacks like a duck, I call that bird a duck."  Garland v. Cargill, 602 U.S. 406, 430 (2024) (Sotomayor, Kagan, & Jackson, JJ., dissenting).  Cf. Respectfully Quoted:  A Dictionary of Quotations Requested from the Congressional Research Service § 1278, at 242 (S. Platt ed. 1989) (attributing quotation to Richard Cardinal Cushing).  I believe that second degree murder is a mandatory minimum sentence.  "A mandatory minimum sentence . . . requires that a defendant be incarcerated for the full length of the mandatory minimum sentence, meaning the defendant is not eligible for, among other things, early release, good conduct and other sentence reductions, parole, or probation, until such mandatory minimum sentence has been served."  Commonwealth v. Rossetti, 489 Mass. 589, 598-599 (2022).[5]  Because murder in the second degree mandates that a defendant be sentenced for a set number of years (at least fifteen) before being eligible for parole, and there are no possibilities for any reductions whatsoever, murder in the second degree carries a mandatory minimum sentence.
      Because the defendant's life sentence in this case was not commuted or revised to a term of years, he is not eligible for earned good time credit or any other possible reduction as a matter of law.  See Commonwealth v. Azar, 444 Mass. 72, 77 (2005).  Thus, the defendant is serving a mandatory minimum sentence pursuant to the plea agreement and hearing.
      2.  Validity of the plea.  I disagree with the majority's conclusion that the defendant's plea was intelligent.  "To satisfy the basic requirements of due process, a guilty plea must be knowing -- courts sometimes use the word 'intelligent' -‑ and voluntary."  Commonwealth v. Najjar, 96 Mass. App. Ct. 569, 571 (2019).  See Commonwealth v. Hiskin, 68 Mass. App. Ct. 633, 637 n.5 (2007) ("Use of the term 'knowing' is but another way of describing the longstanding requirement that a guilty plea be made intelligently . . . .").
"As a matter of due process, unknowing pleas are void.  They must be vacated regardless of whether the court concludes that, if properly informed about the consequences of his plea, the defendant would have nonetheless pleaded guilty.  'As a general proposition of constitutional law, a guilty plea must be vacated or nullified unless the record of the plea proceedings demonstrates that the defendant entered the plea knowingly and voluntarily.'"  (Citation omitted.)
Najjar, supra at 573, quoting Commonwealth v. Rodriguez, 52 Mass. App. Ct. 572, 581 (2001).
      For a plea to be voluntary and intelligent, it must be tendered with a real understanding of its consequences.  See Hiskin, 68 Mass. App. Ct. at 638.  "A defendant's plea is intelligent when made with understanding of the nature of the charges (understanding of the law in relation to the facts) and the consequences of his plea (the legal consequences and constitutional rights he forgoes by pleading guilty rather than proceeding to trial)."  Id.  See Commonwealth v. Morrow, 363 Mass. 601, 605 (1973) ("In establishing that a guilty plea is offered intelligently and voluntarily by the defendant, the judge must ensure that the plea has been made with an understanding of the nature of the charge and the consequences of the plea").  See also Brady v. United States, 397 U.S. 742, 748 (1969).
      The majority's attempt to distinguish Najjar is faulty.  In Najjar, we stated that the denial of the motion for a new trial was erroneous because there was a possibility that the defendant did not know "he would be subject to a [mandatory] minimum sentence of eight years in prison."  Najjar, 96 Mass. App. Ct. at 572.  Importantly, during the plea colloquy, a judge must ensure that the defendant understands the "direct consequences" of his plea (citation omitted).  Commonwealth v. Roberts, 472 Mass. 355, 362 (2015).  "These consequences include the mandatory minimum sentence to which the defendant will be subject."  Najjar, supra at 571.  See Rodriguez, 52 Mass. App. Ct. at 579-580 (defendant's sentence to probation with possible maximum and minimum mandatory sentences that could be imposed if he violates his probation conditions was "not collateral to the crime to which the plea was given[;] [r]ather, it was a direct consequence of, and in recognition of, the crime and the plea thereto . . . .").  "[A] defendant cannot tender a constitutionally adequate guilty plea without knowing that mandatory minimum sentence."  Najjar, supra.  Here, the defendant was not made aware that his sentence was a mandatory minimum.  Contrary to the conclusion of the majority opinion, based on the defendant's prior conversation with his counsel, it was illogical for him to think it was a mandatory minimum sentence as the defendant had been told that he was eligible for good time prior to the fifteen-year parole eligibility date.  And nothing said by anyone, including the judge, could have dissuaded him from that belief.
      The length of a defendant's potential jail sentence is obviously a crucial factor in their decision to plead guilty.  Accordingly, during a defendant's plea colloquy, "[t]he judge shall inform the defendant . . . of the maximum possible sentence on the charge, and, if applicable . . . the mandatory minimum sentence on the charge."  Mass. R. Crim. P. 12 (c) (3) (A) (ii) (c), as amended, 489 Mass. 1501 (2022).[6]  Here, the plea judge accepted the parties' joint recommendation, and the defendant pleaded guilty to murder in the second degree with "a mandatory sentence of life, and . . . a joint request . . . of 15 year [parole] eligibility date."  At no time during the plea hearing was the defendant informed by anyone that he was pleading guilty to a mandatory minimum sentence, which would not make him eligible for good time credit.  Additionally, prior to the plea, his plea counsel misinformed the defendant that he could earn good time prior to the fifteen-year parole eligibility date.
      The prosecutor told the judge that the recommended sentence was a "mandatory term . . . a mandatory sentence of life, and it will be a joint request under the new sentencing provisions of 15 year eligibility date.  So essentially 15 to life" (emphasis added).  Additionally, in response to a question from the judge regarding the Commonwealth's recommendation, the prosecutor replied, "Yes, Your Honor, it is a life sentence. . . .  [E]ssentially it's life with parole eligibility at 15 years."  Notably, the phrase "mandatory minimum" was mentioned only when the judge asked plea counsel, "Have you also explained to [the defendant] the sentences including any potential mandatory minimums?"  Plea counsel answered, "Yes, I have, Your Honor."
      Despite the plea judge inquiring with plea counsel about the mandatory minimum sentence, it was not clearly articulated to the defendant that he was facing a mandatory minimum sentence of fifteen years.  Moreover, the information that plea counsel provided to the defendant regarding his ability to earn good time was incorrect.
      The majority states that "the fifteen-year parole eligibility date logically communicated to the defendant that he would not be considered for release until he served fifteen years."  Ante at      .  This ignores the reality of this case because it is directly contradictory to what plea counsel had told the defendant prior to the plea.  Plea counsel told the defendant he would be eligible for parole prior to fifteen years as he believed the defendant could earn good time credit to reduce the fifteen-year sentence.  In essence, plea counsel told the defendant that he was not receiving a mandatory minimum sentence of fifteen years.[7]
      The Commonwealth does not dispute what plea counsel told the defendant.  The majority relies on the fact that good time credit in Massachusetts is but a "contingent consequence of being confined" (quotation and citation omitted).  Commonwealth v. Brown, 6 Mass. App. Ct. 844, 844 (1978).  Indeed, a court's failure to inform the defendant of such a "collateral consequence," without more, does not render a guilty plea unknowing and involuntary.  See Roberts, 472 Mass. at 362.  In this case there is more.
      "[W]here a defendant lacks actual knowledge of what the plea connotes or of the direct consequences of the plea, it is unknowing in a constitutional sense, and must be vacated . . . ."  Najjar, 96 Mass. App. Ct. at 576.  In Najjar, the plea judge "failed to articulate the mandatory minimum sentence" to the defendant, and the defendant received inaccurate information from the prosecutor.  Id. at 573.  As a result, the defendant pleaded guilty without knowing that "he would be subject to a minimum sentence of eight years'" imprisonment.  Id. at 572.  Here, the defendant was similarly provided incorrect information from his own attorney; he pleaded guilty to murder in the second degree without understanding that he was subject to a mandatory minimum sentence of fifteen years' imprisonment.  Not only did plea counsel provide incorrect information regarding good time credit eligibility to the defendant, but the defendant was also not informed by the judge or the prosecutor during his plea colloquy that he was facing a mandatory minimum sentence.
      The majority's comparison of this matter to Commonwealth v. Perry, 389 Mass. 464 (1983), is also unavailing.  In Perry, as here, defense counsel gave incorrect advice to the defendant; counsel told the defendant that while "second degree murder was punishable by life imprisonment with parole eligibility after fifteen years, . . . he would probably serve only twelve years."  Id. at 469.  There, notably, the judge did correct any confusion when he explained to the defendant that his sentence for murder in the second degree was "not discretionary" and that the defendant would serve a "life imprisonment with a possibility of parole in fifteen years."  Id. at 470.  In contrast, here, the judge did not notify the defendant about the mandatory minimum sentence, nor did the judge make clear that the defendant had to serve fifteen years before he could be eligible for parole.  At no time, as is required by rule 12 and the basic requirements of due process, was the defendant told that a consequence of his plea was a mandatory minimum sentence of fifteen years to life.  See Najjar, 96 Mass. App. Ct. at 574.
      Conclusion.  Second degree murder carries a mandatory minimum sentence.  Where a defendant is provided incorrect information by his plea counsel regarding a mandatory minimum sentence and is not informed during his plea colloquy that his sentence is a mandatory minimum sentence, his plea is not constitutional.  Thus, I dissent.
          
footnotes for dissenting

[1] I respectfully disagree with the majority that the defendant waived the argument that his plea was not voluntary and intelligent because he was not informed that his sentence was a mandatory minimum.  In his initial brief, the defendant repeatedly referenced Commonwealth v. Najjar, 96 Mass. App. Ct. 569 (2019), and addressed the issue of a "mandatory minimum" sentence.
                [2] The parties agreed at the motion hearing that plea counsel's affidavit should be deemed true.  The motion judge accepted this stipulation.
               [3] As explained infra, that advice was incorrect.
                [4] In relevant part, G. L. c. 279, § 24, states that "the court shall fix a minimum term which shall be not less than 15 years nor more than 25 years.
               [5] The Legislature has adopted different approaches to establish mandatory minimum sentences.  See, e.g., G. L. c. 94C, § 32H ("the sentence imposed upon a person convicted of [committing certain controlled substances offenses] shall not be reduced to less than the mandatory minimum term of imprisonment . . . , nor shall any sentence of imprisonment imposed upon any person be suspended or reduced until such person shall have served said mandatory minimum term of imprisonment"); G. L. c. 94C, § 32J ("No sentence imposed pursuant to this section shall be for less than a mandatory minimum term of imprisonment of 2 years"); G. L. c. 265, § 18A (armed assault in dwelling "shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years.  No person imprisoned under this paragraph shall be eligible for parole in less than five years"); G. L. c. 265, § 24B (assault of child with intent to commit rape while armed "shall be punished by imprisonment in the state prison for life or for any term of years, but not less than ten years"; assault of child with intent to commit rape while armed, subsequent offense, "shall be punished by imprisonment in the state prison for life or for any term of years, but not less than 15 years"); G. L. c. 266, § 14 (armed burglary and assault on occupant "shall be punished by imprisonment in the state prison for life or for any term of not less than ten years"); G. L. c. 269, § 10E (sentence for unlawful sale or distribution of from three to ten firearms within twelve-month period is "a term of imprisonment, not to exceed 20 years in the state prison; provided, however, that said sentence shall not be less than a mandatory minimum term of imprisonment of 5 years").
          [6] At the time of the defendant's plea, Mass. R. Crim. P. 12 (c) (3) (B), as appearing at 442 Mass. 1513 (2004), stated:  "The judge shall inform the defendant on the record, in open court . . . of the mandatory minimum sentence, if any, on the charge."  The defendant did not raise any issue regarding the judge violating Mass. R. Crim. P. 12 (c) (3), and therefore I do not address any potential remedy for the potential violation of the rule.
          [7] Although not guaranteed, based on plea counsel's information, the defendant may have believed that he would be eligible for a minimum of 7.5 days per month of good time, which would have reduced his parole eligibility by almost four years.  See G. L. c. 127, § 129D.  So instead of fifteen-year parole eligibility, which is what it would be as mandatory minimum sentence, he would have potentially been parole eligible at approximately eleven years.